JOHN DEERE INSURANCE COMPANY, Plaintiff,

v.

SHAMROCK INDUSTRIES, INC.; Gregory Erlandson; Jack T. Mowry; Metal Craft Machine & Engineering, Inc.; NEOS, Inc.; and Cardinal Packaging, Inc., Defendants.

Civ. No. 4–88–176.

United States District Court, D. Minnesota, Fourth Division.

Oct. 13, 1988.

Richard P. Mahoney and Mahoney, Dougherty & Mahoney, Minneapolis, Minn., for plaintiff.

Malcolm L. Moore, Philip G. Alden and Moore & Hansen, Minneapolis, Minn., for defendant Shamrock Industries, Inc.

James W. Reuter, Jon G. Trangsrud and Barna, Guzy, Merrill, Hynes & Giancola, Ltd., Minneapolis, Minn., for defendants Erlandson, Mowry, Metal Craft, and NEOS, Inc.

## ORDER

DOTY, District Judge.

This diversity case comes before the Court on defendants Metal Craft Machine & Engineering, Inc.'s and Jack T. Mowry's ("Metal Craft and Mowry") motion for partial summary judgment in a declaratory judgment action brought against defendants by plaintiff John Deere Insurance Company ("Deere"). Deere responded with its own motion for summary judgment including as defendants subject to the motion (in addition to defendants Metal Craft and Mowry), NEOS, Inc. ("NEOS"), Gregory Erlandson ("Erlandson"), Shamrock Industries, Inc. ("Shamrock") and Cardinal Packaging, Inc. ("Cardinal") who are also defendants in the declaratory judgment action. During argument on the motion, NEOS and Erlandson joined Metal Craft and Mowry's motion for partial summary judgment. The Court grants the motion of Metal Craft, Mowry, NEOS and Erlandson except as indicated below and denies that part of the motion of Deere which is against defendants Metal Craft, Mowry, NEOS and Erlandson. The Court grants that part of the motion of Deere which is against defendant Cardinal. The Court grants and denies these motions for the reasons stated below.

## FACTS

The parties agree on the following facts. On June 25, 1987, Shamrock commenced an action against Erlandson, Mowry, Metal Craft, NEOS and Cardinal alleging patent infringement, misappropriation of trade secrets, unfair competition and breach of contract (the "underlying action"). These defendants tendered the defense of the underlying action to Deere by letter dated November 25, 1987, stating that a number of insurance policies purchased by Metal Craft obligated Deere to defend the action. Deere refused the tender on December 22, 1987. These defendants requested Deere to reconsider by letter dated January 19, 1988. Deere subsequently commenced this action on February 22, 1988, requesting the Court to declare that it had no duty to defend or indemnify these defendants with respect to the underlying action commenced by Shamrock.

### Background of the Underlying Action

Shamrock is a Minnesota corporation engaged in the business of selling plastic containers to dairies. Cardinal is a direct competitor of Shamrock. Both Cardinal and Shamrock install ice cream pail filling machines in their customers' places of business, and permit their customers to use the machines as part of transactions in which their customers buy Cardinal and Shamrock's plastic containers.

Metal Craft is a supplier of precision parts for various industries. Mowry is president and sole owner of all of Metal Craft's stock. Erlandson used to be an employee of Shamrock. In about October of 1985, while still in Shamrock's employ, Erlandson conceived an idea for a machine which would fill containers of ice cream faster than any machine in existence.

Erlandson spoke with Mowry about this idea and in October, 1985, the two agreed to build the machine and market it. Assembly of the prototype began sometime in June, 1986, at the shop of Metal Craft. The prototype was ready for testing in October, 1986.

Mowry and Erlandson decided to form a new company, NEOS, Inc. to continue development and marketing of the machine. NEOS was incorporated in January, 1987. Mowry owns 100 percent of the shares of NEOS. Erlandson left his employment

with Shamrock on April 16, 1987, and immediately went to work for NEOS. He has no financial interest in NEOS.

In the fall of 1985 and early 1986, before NEOS had been incorporated, Mowry wrote to Arthur Blackburn, the president of Cardinal, a number of times on Metal Craft letterhead to tell him about this new proposed machine. Blackburn stated he would have an interest if it would perform as well as Mowry said it would. In October, 1986, Blackburn was present at the first demonstration of the prototype at the Metal Craft shop in Elk River, Minnesota. He made no commitment at that time.

In April, 1987, Erlandson and Mowry brought the machine to Winston–Salem, North Carolina, and installed it in Dairy Fresh, a customer of Cardinal. The test was a resounding success. A purchase order for ten of the machines was drafted, but not signed, on April 29, 1987. The actual agreement was finally consummated on August 1, 1987, when Blackburn, on behalf of Cardinal, and Mowry, on behalf of NEOS, signed an exclusive distribution agreement. Mowry personally guaranteed that same agreement.

On May 29, 1987, Shamrock, through its attorney, sent everyone concerned a letter notifying them of Shamrock's assertion of patent infringement. The first installation of a machine at a facility of a former customer of Shamrock occurred on August 6, 1987, when one was installed at Heartland Farms Dairy in Hazelwood, Missouri. That machine did not go into operation until January of 1988.

The essential paragraphs of Shamrock's complaint relevant to this declaratory judgment action allege that Mowry, Metal Craft, NEOS and/or Erlandson manufactured, used and sold pail filling machines; copied features of plaintiff's pail filling machines; have disclosed, disseminated and/or published through direct communication and/or through the sale and distribution of machines, trade secrets and proprietary information of Shamrock, particularly information regarding Shamrock's business practices, design plans and contemplated future improvements for its pail filling machines; and have sold and are continuing to sell and solicit purchase orders for pail filling machines.

*The Insurance Contracts*

Metal Craft purchased six insurance contracts from Deere (hereinafter referred to as policies I, II, III, IV, V, and VI).[1] This case requires the Court to examine five different areas of these contracts: (1) the scope of the word "insureds" and (2) the phrase "advertising injury"; (3) the meaning of an exclusion which excludes advertising activity coverage where the first publication occurred prior to the commencement of the policy period; (4) the meaning of the phrase "actual malice"; (5) the meaning of a provision which excludes liability "assumed by the insured under any contract or agreement."

The named insured on all the policies is Metal Craft. The policies differ as to the extent to which other insureds are included. Policies I and II extend the definition of an insured to cover "an executive officer ... acting within the scope of his duty as such." Policies III and IV contain the same extension, but also include "any subsidiary of the Named Insured and any other entity coming under the Named Insured's control over which it assumes active management." Policy V extends coverage to "executive officer[s] ... but only with respect to [their] duties as [such]." Policy VI contains the same language as Policy V but also extends coverage to "your subsidiaries under active management and control at the inception of this policy."

---

1. The policies' coverage periods date as follows:

| Policies I and III: | 8/1/85–8/1/86 |
|---|---|
| Policies II and IV: | 8/1/86–8/1/87 |
| Policies V and VI: | 8/1/87–8/11/88 |

The policies have the following titles:

| Policies I and II: | Special Multi–Peril Policy |
|---|---|
| Policies III and IV: | Catastrophe Umbrella Liability Policy. |
| Policy V: | Commercial General Liability Coverage Form. |
| Policy VI: | Special Commercial Umbrella Liability Policy. |

Deere contends that only Metal Craft, if anyone, is an insured under these policies. Defendants Metal Craft, Mowry, NEOS and Erlandson all claim coverage under the policies. Defendant Cardinal, by affidavit, admits the policies afford it no coverage.

All of the contracts require Deere to defend the insured against suits brought against the insured which allege "advertising injury". Deere and the defendants vigorously dispute the meaning of that phrase. The policies all define "advertising injury" in essentially the same fashion; that is, policies I and II define it as "injury arising out of an offense ... occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan ...". Policies III and IV call the covered phrase "advertising liability", not "advertising injury" and define it as "damages because of libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation or invasion of right of privacy arising out of the named insured's advertising activities ...". Policy V states that "this insurance applies to 'advertising injury' only if caused by an offense committed ... in the course of advertising your goods, products or services", and defines advertising injury as "[i]njury arising out of one or more of the following offenses:

(a) oral or written publication or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(b) oral or written publication of material that violates a person's right of privacy;

(c) misappropriation of advertising ideas or style of doing business; or

(d) infringement of copyright, title or slogan."

Policy VI defines advertising injury as "injury arising out of one or more of the following 'offenses' committed in the course of advertising an insured's goods, products or services:

a. oral or written publication of material that slanders or libels a person or

organization of disparages a person's or organization's goods, products or services;

b. oral or written publication of material that violates a person's right or privacy;

c. misappropriation of advertising ideas of style of doing business;

d. infringement of copyright, title or slogan; or

e. unfair competition."

Deere contends the suit brought by Shamrock clearly falls outside of the scope of these definitions of advertising injury. The defendants claim that the suit arguably falls within these definitions.

Deere states that three provisions are applicable to exclude coverage under at least some of the policies. The first such exclusion, which Deere claims to be applicable only to policies V and VI, excludes claims made for advertising injury "arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." The second exclusion which Deere argues applies is that which excludes coverage for "injury arising out of any act committed by the *insured* with actual malice." And finally, Deere contends that coverage is avoided by a provision excluding coverage for "liability assumed by the insured under any contract or agreement."

## DISCUSSION

The Court's jurisdiction in this case arises from diversity of citizenship of the parties and the requisite amount in controversy. 28 U.S.C. § 1332 (1982). Accordingly, state law governs the substantive issues in this suit. *Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1983).

In this case, defendants Metal Craft and Mowry, who were joined during argument on the motion by NEOS and Erlandson, moved for summary judgment on their claim that Deere has a duty to defend them in the suit by Shamrock. Deere responded with its own motion for summary judgment. Summary judgment is appropriate

if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed.R. Civ.P. 56(c). Cases such as this one requiring interpretation of insurance contracts raise questions of law and thus are particularly amenable to summary judgment. *See Kemper Ins. Co. v. Stone*, 269 N.W.2d 885 (Minn.1978); *State Farm Mutual Auto Ins. Co. v. Budget Rent–A–Car Sys.*, 359 N.W.2d 673 (Minn.Ct.App.1984). In ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.*, 106 S.Ct. at 2511.

The evidentiary burden established under Minnesota law is that Deere has the burden of showing that the claims in the underlying lawsuit fall "clearly outside" the policies' coverage. *Grain Dealers Mutual Ins. Co. v. Cady*, 318 N.W.2d 247, 251 (Minn.1982). Thus, if a reasonable juror could not find that the claims fall "clearly outside" coverage afforded by the policies, summary judgment against Deere is appropriate. On the other hand, the claims against defendants only need to "arguably" fall within coverage afforded by the policy. *Johnson v. Aid Insurance Co. v. Concrete Units, Inc.*, 287 N.W.2d 663, 665 (Minn.1985). Also, the duty to defend a claim against an insured is much broader than the duty to indemnify. *Lanoue v. Fireman's Fund Am. Ins. Cos.*, 278 N.W. 2d 49, 53 n. 1 (Minn.1979). Furthermore, all doubts must be decided in favor of the insured. *Id.*

*Insureds*

The first provision requiring interpretation is the scope and meaning of the word "insured" as defined under the policies. It is not disputed that Metal Craft, as the named insured, is an insured under the policies. The policies all provide coverage for officers and directors of the named insured acting within the scope of their employ, therefore, Mowry, as president and sole shareholder of Metal Craft, is covered. Metal Craft was in the business of making precision parts for machines. While president of Metal Craft, Mowry spoke with Erlandson about Erlandson's new idea of building a pail filling machine. Mowry decided to develop and market this idead with Erlandson. Work on development of the machine began on Metal Craft's premises. In fact, the first prototype was entirely built and first demonstrated there. While development was going on at Metal Craft, Mowry contacted Cardinal using Metal Craft letterhead, regarding a potential purchase of the machine. All this activity occurred long before NEOS, the company which ultimately developed and sold the machine, was incorporated.

Deere argues that Mowry was not acting within the scope of his duties for Metal Craft because the machine was really a product of NEOS, not Metal Craft. This argument fails to recognize the fact that much of the promotion and development as well as the initial demonstration of the machine occurred at Metal Craft before NEOS was ever created.

■ Whether NEOS is an insured under the policies poses a more difficult question. NEOS only asserts it is covered under policies III and IV. Specifically, NEOS asserts it is included as a "named insured" where that term is defined in policies III and IV as "any other entity coming under the named insured's control over which it assumes active management."

The facts in this case suggest that Metal Craft arguably controlled and assumed active management of NEOS through its agent Mowry. The close relationship between Metal Craft and NEOS is remarkable. First of all, the sole product of NEOS was originally developed and marketed by Metal Craft. Second, Metal Craft's president, Mowry, exercised total control over NEOS. He was and is the 100% owner of NEOS and one of the two directors. Moreover, the other director of NEOS is Metal Craft's secretary.

All of these facts persuade the Court that a reasonable jury could not conclude

that NEOS is not arguably "controlled" and "under the active management" of Metal Craft, and therefore the Court holds that NEOS is covered under policies III and IV.

The Court also finds that the language of policies III and IV arguably cover Erlandson. Policies III and IV further define "insured":

The unqualified word *"insured"*, wherever used ... means the *named insured* and each of the following to the extent set forth below:

 .  .  .  .  .

(c) except with respect to the ownership, maintenance or use, including loading or unloading of automobiles or aircraft, (1) any executive officer, other employee, director or stockholder thereof while acting within the scope of his duties as such....

From this language it appears an "employee" of a named insured is covered. It has already been determined above that NEOS is a "named insured" as that phrase is defined under policies III and IV. Since Erlandson is an employee of NEOS, Erlandson is therefore also covered under policies III and IV.

*Advertising Activity*

■ Deere's next contention for no coverage has to do with its interpretation of "advertising activity." In its memoranda, and during oral argument, Deere argued that the letters sent by Mowry to Blackburn, president of Cardinal, and the demonstrations of the machine were selling activities, not advertising. Thus, since all of the policies require injury to occur during, or arise out of, some advertising activity, Deere reasons that no coverage is afforded here. Deere relies on a Minnesota Supreme Court case which defines advertising activity rather narrowly as "public or widespread distribution of the alleged [advertising] material." *See Fox Chemical Co., Inc. v. Great Am. Ins. Co.*, 264 N.W.2d 385, 386 (Minn.1978); *see also Playboy Enterprises v. St. Paul Fire & Marine Ins.*, 769 F.2d 425, 429 (7th Cir.1985) ("We agree with the Minnesota Supreme Court in *Fox Chemical* that the term 'advertising' does

refer to the widespread distribution of promotional material to the public at large").

These cases are not entirely applicable here. The Minnesota Supreme Court's interpretation was grounded in part on "companion words found in the exclusion." *Fox Chemical*, 264 N.W.2d at 386. Those companion words were "broadcasting" and "telecasting", which tend to indicate more widespread distribution. There are no such companion words in the instant policies. Therefore, this Court finds that the Minnesota Supreme Court's interpretation of the meaning of "advertising" in *Fox* not controlling in this case.

Defendants argue that since "advertising activity" is not defined in the policy, it is ambiguous and should be construed against the insurer. *See Prahm v. Rupp Const. Co.*, 277 N.W.2d 389 (Minn.1979). Defendants provide as an alternative to the definition given in *Playboy* and *Fox*, for example, that found in Black's Law Dictionary: "Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business...." *Black's Law Dictionary*, 50 (5th Ed.1979). Deere contends that the phrase "advertising activity" is far from ambiguous and the Court should therefore simply apply its plain meaning. *See Gershcow v. Homeland Ins. Co.*, 217 Minn. 568, 15 N.W.2d 88 (1944). If every word in every insurance policy were required to be defined within the policy, argues Deere, they would become unmanageable heaps of complicated paper.

Very little legal authority exists to provide guidance in interpreting the precise meaning of the phrase "advertising activity". At one extreme are *Playboy* and *Fox* which may be read as requiring "wide dissemination" of material for a finding of "advertising activity". On the other extreme is the dictionary's broad definition seemingly encompassing almost any form of solicitation.

In this case, Mowry, using Metal Craft letterhead, sent three letters to a potential buyer, Cardinal, exclaiming the strengths and virtues of the pail filling machine upon

which Shamrock bases some of its claims. There were also various demonstrations of the machine on the premises of some of Cardinal's customers specifically for the benefit of Cardinal.

A closer examination of the letters shows that they arguably constituted advertising activity. Moreover, no reasonable juror could find these letters fall "clearly outside" the meaning of advertising activity. The first letter, dated November 1, 1985, stated "we can build machines to help you sell more of your containers." The second letter, dated January 20, 1986, stated such things as "we will warrant each unit for one year. We also furnish a complete maintenance manual with each machine." Mowry's third letter, written on approximately March 1, 1986, listed the machine's "selling points"[2] and enclosed pictures.

If these letters stating the beneficial features of the machine were sent to 100 potential customers, instead of one, Deere would have no argument that they were not advertising activity. While activity directed at one customer seems to stretch the meaning of advertising, Black's Law Dictionary's definition of "advertise" encompasses any form of solicitation, presumably including solicitation of one person. Deere failed to provide in its policy any limitation on the scope of the meaning of advertising activity. If Deere wanted to limit covered advertising activity to "wide dissemination of materials", Deere could have so provided in its policy. Therefore, the Court finds that there is more than one reasonable interpretation of the meaning of "advertising activity", and therefore the policy is ambiguous and must be construed against the insurer.

■ Deere asserts that even if the letters and demonstrations are considered advertising activity, the policies still require that one of the offenses stated in the policies to arise out of that activity, and be complained of in the underlying action, for Deere's duty to defend to arise. Deere contends the allegations in the Complaint of unfair competition, misappropriation of trade secrets, etc., did not arise out of the sending of the letters or conducting of the demonstrations, but rather arose from the totally unrelated infringement on Shamrock's patent rights. Defendants Mowry and Metal Craft respond that the claims of misappropriation of trade secrets and unfair competition do arise out of the advertising activity because, but for that activity, there would not have been a disclosure of trade secret information, an essential element of a misappropriation of the trade secret claim. Defendants further argue that neither the language of the insurance policies nor case law require there to be proximate cause between the advertising activity and the injury alleged for that injury to "arise out of the advertising activity".

The Court agrees with defendants. Because the underlying claims against defendants need only arguably fall within the coverage of the policies, and because any reasonable differing interpretation must be construed against the insurer, the Court finds that the claims of misappropriation of trade secrets alleged arguably fall within the coverage of the appropriate insurance policy. If even part of a cause of action is arguably within the scope of coverage, the insurer must defend. *Prahm v. Rupp Const. Co.*, 277 N.W.2d 389, 390 (Minn. 1979). Therefore, Deere has a duty to defend Metal Craft, Mowry, NEOS and Erlandson.

*Exclusions*

■ Deere next argues that a number of its exclusionary provisions place defendants' claims outside coverage of the insurance policies. First, Deere points to its exclusion in policies V and VI which exclude any advertising injury where the advertising activity was first published before the effective date of the policy. Deere asserts this exclusion emancipates it from its duty to defend under the last two policies because their effective dates were Au-

2. The letter listed, among others, the following selling points of the machine: "Dual line for smoothness of operation. Dual line with alternate filling eliminates back pressure and gives a more consistent fill. Dual line filling reduces wear as well as increases productivity. Safety was made a priority in the design of the machine ...".

gust 1, 1987 for both policies and all of the letters and demonstrations occurred well before that.[3]

Defendants Mowry and Metal Craft respond to this argument by asserting that the identical argument was made and rejected in *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 222 Cal.Rptr. 276 (1986) (the *"Seaboard"* case). In *Seaboard*, the complaint in the underlying action alleged the tortious activities occurred "at a time unknown to plaintiffs but at least as early as 1966." *See Id.* at 613, 222 Cal.Rptr. 276. The California Court of Appeals thought significant the fact that the complaint then proceeded to list a series of alleged wrongful acts *without indicating exactly when any of those specified acts occurred.* In this case, the complaint in the underlying action does not specify dates the alleged acts were committed. The dates the letters were sent in the instant case, however, establish specific dates on which the first activity arguably constituting "advertising activity" occurred. Because those dates were discernable well before the commencement of the policy period, this case is distinguishable from *Seaboard.*

It appears from the facts before the Court that the first publication arguably constituting advertising activity did occur prior to the coverage of policies V and VI, therefore the exclusion applies to remove Deere from any responsibility to defend or indemnify defendants under policies V and VI.

█ Deere next argues that the exclusion applying an actual malice standard exonerates it from the duty to defend. The Court finds that the defendant's alleged conduct did not rise to the level of actual malice. Actual malice is generally defined as acting "with knowledge that [the allegedly wrongful advertising activity] was false or with reckless disregard of whether it was false or not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244, 106 S.Ct. 2505, 2508, 91 L.Ed.2d 202 (1986).

Deere has come forward with little evidence which lends support to its claim that

the defendants acted with actual malice. Deere asserts that because the defendants knew of Shamrock's claim of patent infringement on May 29, 1987, before the first installation of the machine at a former customer of Shamrock, it thereby acted with actual malice. Such a claim, without further proof, fails the standard to be applied. Defendants have vigorously disputed since May 29, 1987, Shamrock's contention that it possessed any patent or protected trade secret. Moreover, no provision in the underlying Complaint by Shamrock alleges that defendant acted with actual malice. Thus, the Court finds that Deere has not met its burden of showing actual malice.

█ The final exclusion Deere would apply is that which excludes liability for obligations assumed under contract. This argument is of no avail to free Deere from having to defend the covered parties as it only applies to the third count of the underlying Complaint and it is well settled law in Minnesota that where any part of a claim is covered under the policy, the duty to defend nevertheless arises. *See Johnson v. Aid Ins. Co. of Des Moines, IA.*, 287 N.W. 2d 663, 665 (Minn.1980); *Prahm v. Rupp Const. Co.*, 277 N.W.2d 389, 390 (Minn. 1979); *Christian v. Royal Ins. Co.*, 240 N.W. 365, 366 (Minn.1932).

Finally, the Court finds no merit to Deere's claim that the injury alleged in the underlying action was not fortuitous, and that therefore Deere has no duty to defend. The case relied on by Deere presented a set of facts entirely distinguishable from this case. *See Bituminous Casualty Corp. v. Bartlett*, 240 N.W.2d 310 (Minn.1976). In *Bituminous* it was conclusively established that the insured "knowingly and intentionally" committed an act which triggered coverage. In this case no reasonable jury could conclude that Deere met its burden of clearly showing defendants acted with intent and knowledge.

### CONCLUSION

In sum, the Court grants the motions of Metal Craft, Mowry, NEOS and Erlandson

---

**3.** The letters were sent on November 11, 1985; January 20, 1986 and about March 1, 1986. The demonstrations were conducted from about October, 1986 to April of 1987.

requesting that the Court adjudge that Deere has a duty to defend Metal Craft and Mowry under policies I, II, III and IV and NEOS and Erlandson under policies III and IV.

It follows that Deere's motion for summary judgment as against Metal Craft, Mowry, NEOS and Erlandson requesting the Court to declare there is no duty to defend them, is hereby denied except that the Court determines there is no such duty under policies V and VI for any of the defendants, and there is no such duty under policies I, II, V and VI for NEOS and Erlandson.

With respect to that part of Deere's summary judgment motion requesting the Court to adjudge that it had no duty to indemnify any of the defendants in the underlying action, the Court denies that motion on the grounds that there are still numerous genuine issues of material fact which cannot be determined until the underlying action is further developed, if not completed.

With respect to that part of Deere's motion against defendant Cardinal, the Court grants the motion on the ground that Cardinal admits by affidavit that it is entitled to no coverage under the policies.

With respect to damages in this action, the Court concludes that Deere is obligated to provide a defense for defendants Mowry, Metal Craft, NEOS and Erlandson in the underlying action, and the Court awards those defendants costs, disbursements and attorney's fees incurred in defense of the underlying action and in this declaratory judgment action, in an amount to be determined at an evidentiary hearing. *See Lanoue v. Fireman's Fund Am. Ins. Co.,* 278 N.W.2d 49, 55 (1979) ("Where an insurance contract is intended to relieve the insured of the financial burden of litigation, the insured will not be required to pay the litigation costs of forcing the insurer to assume that burden.").