929 F.2d 413
 JOHN DEERE INSURANCE COMPANY, Appellant,
v.
SHAMROCK INDUSTRIES, INC.; Gregory Erlandson; Jack T.
Mowry; Metal Craft Machine & Engineering, Inc.;
NEOS, Inc.; and Cardinal Packaging,
Inc., Appellees.
 No. 89-5532.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 13, 1990.
Decided April 1, 1991.
 
 Richard P. Mahoney, Minneapolis, Minn., for appellant.
 James W. Reuter and Jon G. Trangsrud of Lindquist & Vennum, Minneapolis, Minn., for appellees.
 Before McMILLIAN and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 John Deere Insurance Company ("Deere") appeals from a final judgment entered in the United States District Court[1] for the District of Minnesota, granting partial summary judgment in favor of defendants on the issue of the duty to defend, and awarding defendants attorney's fees, costs and expenses. John Deere Insurance Co. v. Shamrock Industries, Inc., 696 F.Supp. 434 (D.Minn.1988) (John Deere ). Deere brought the action seeking a declaratory judgment that it was not obligated to defend or indemnify defendants under policies[2] of insurance issued to Metal Craft Machine & Engineering, Inc. ("Metal Craft"), for claims arising out of an underlying patent infringement action between Shamrock Industries, Inc. ("Shamrock"), Gregory Erlandson, Jack T. Mowry, NEOS, Inc. ("NEOS"), Cardinal Packaging, Inc. ("Cardinal"), and Metal Craft.
 
 
 2
 For reversal, Deere argues that the district court erred in determining, as a matter of law, that NEOS and Erlandson are insureds under the Deere policies, in awarding costs and attorney's fees in the absence of an established duty to indemnify, and in entering final judgment without a disposition of the issue of coverage. Deere also argues that the district court erred in granting summary judgment in favor of NEOS and Erlandson because they failed to give the requisite ten-day notice of their motion. For the reasons discussed below, we affirm the judgment of the district court.
 
 I.
 
 3
 The facts of the underlying action are as follows. Shamrock filed the underlying action on June 25, 1987, alleging patent infringement, misappropriation of trade secrets, unfair competition, and breach of contract. Shamrock is a Minnesota corporation engaged in the business of selling plastic pails that are used by dairies as ice cream containers. Shamrock also installs ice cream pail filling machines and allows its customers to use the machines in conjunction with its ice cream pails. Cardinal is a direct competitor of Shamrock. Mowry is the president and sole owner of Metal Craft, which is a manufacturer of precision machine parts.
 
 
 4
 In October 1985, while employed by Shamrock, Erlandson invented an improved machine for filling ice cream containers. At that time, Erlandson entered into an agreement with Mowry to build and market this machine. In June 1986, they began assembly of a prototype at a Metal Craft facility. This prototype was completed and ready for testing four months later.
 
 
 5
 In late 1985 and early 1986, Mowry contacted the president of Cardinal for the purpose of selling him this new machine; and in October 1986, the president of Cardinal witnessed a demonstration of the machine at the Metal Craft shop in Elk River, Minnesota. Mowry and Erlandson incorporated NEOS in January 1987, for the purpose of continuing the development and marketing of the machine. Mowry is the sole owner of the NEOS stock. On April 16, 1987, Erlandson terminated his employment with Shamrock and immediately went to work for NEOS. In that same month, Erlandson and Mowry installed one of their machines in a Cardinal dairy located in Winston-Salem, North Carolina, for testing. As a result of its favorable performance, Cardinal ordered ten NEOS machines and entered into an exclusive distribution agreement with NEOS, which Mowry personally guaranteed.
 
 
 6
 On May 29, 1987, Shamrock notified everyone concerned that it believed the NEOS machine infringed its patent and, on June 25th, filed suit in the United States District Court for the District of Minnesota. On August 6, 1987, a NEOS machine was installed at Heartland Farms Dairy in Hazelwood, Missouri, which was the first instance of one of these machines being installed in a facility of a former Shamrock customer.
 
 
 7
 As the district court noted, the essential elements of Shamrock's complaint alleged:
 
 
 8
 Mowry, Metal Craft, NEOS and/or Erlandson manufactured, used and sold pail filling machines; copied features of [Shamrock's] pail filling machines; have disclosed, disseminated and/or published through direct communication and/or through the sale and distribution of machines, trade secrets and proprietary information of Shamrock, particularly information regarding Shamrock's business practices, design plans and contemplated future improvements for its pail filling machines; and have sold and are continuing to sell and solicit purchase orders for pail filling machines.
 
 
 9
 John Deere, 696 F.Supp. at 436.
 
 
 10
 Defendants tendered the defense of the patent infringement suit to Deere in a letter dated November 25, 1987, claiming that the insurance policies purchased by Metal Craft obligated Deere to defend the action. On December 22, 1987, Deere refused the tender of the defense of the suit; and on January 19, 1988, defendants requested it to reconsider this decision. Deere filed the instant declaratory judgment action on February 22, 1988.
 
 
 11
 In its complaint, Deere claimed that the insurance policies afforded no coverage for the claims made in the underlying suit and that it was not obligated to defend or indemnify any of the parties in that action. Erlandson, Mowry, Metal Craft, and NEOS (hereinafter collectively referred to as "NEOS Defendants") asserted a counterclaim seeking a declaration that Deere was obligated to defend and indemnify them for the underlying claims, and sought disbursements and attorney's fees associated with the defense of both the underlying action and the instant declaratory judgment action.[3]
 
 
 12
 On May 13, 1988, Metal Craft and Mowry filed a motion for summary judgment on their claim that Deere was obligated to defend them in the underlying action under the "advertising liability/advertising injury" coverage[4] of the Deere policies. Deere moved for summary judgment against all defendants, including NEOS and Erlandson, and requested that the district court "specify for whom its policy or policies provide coverage and/or who is entitled to a defense." John Deere's Reply Memorandum in Support of Motion for Summary Judgment at 1, in Joint Appendix at 236. A hearing was held on the motions for summary judgment on September 23, 1988, at which time Erlandson and NEOS orally joined in Metal Craft and Mowry's motion for summary judgment.
 
 
 13
 On October 13, 1988, the district court entered an order granting, in part, the NEOS defendants' motion for summary judgment to the extent it found that Deere was obligated to defend Metal Craft and Mowry under each Special Multi-Peril Policy and each Catastrophe Umbrella Liability Policy, and that Deere was obligated to defend NEOS and Erlandson under each Catastrophe Umbrella Policy. The district court determined that all of the NEOS defendants were "insureds" under the Deere policies, John Deere, 696 F.Supp. at 438-39, and that the underlying claims of misappropriation of trade secrets arguably fell within the "advertising activity" coverage of the policies. Id. at 440. It noted that, "even if part of a cause of action is arguably within the scope of coverage, the insurer must defend." Id. (citing Prahm v. Rupp Construction Co., 277 N.W.2d 389, 390 (Minn.1979)).
 
 
 14
 The district court also awarded the NEOS defendants attorney's fees and costs incurred in defending both the patent infringement action and the declaratory judgment action, in an amount to be determined at a later evidentiary hearing. At the same time, the district court denied Deere's motion for summary judgment on the issue of the duty to defend, except with respect to two of the Deere policies.[5] In addition, the district court denied Deere's motion for summary judgment on the issue of its duty to indemnify any of the NEOS defendants "on the grounds that there are still numerous genuine issues of material fact which cannot be determined until the underlying action is further developed, if not completed." John Deere, 696 F.Supp. at 442.
 
 
 15
 On February 22, 1989, following an evidentiary hearing, the district court entered an order awarding costs, disbursements and attorney's fees to the NEOS defendants.[6] On September 19, 1989, the district court denied Deere's motion for reconsideration and granted the NEOS defendants' motion for entry of judgment on all of the court's orders pursuant to Fed.R.Civ.P. 54(b). The district court also awarded additional attorney's fees, costs and disbursements in favor of the NEOS defendants. This appeal followed.[7]
 
 II.
 
 16
 This case comes before us following the entry of summary judgment. Summary judgment is appropriate when the district court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). In addition, a motion for summary judgment must be viewed in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences to be drawn from the underlying facts. Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). We review the district court's conclusions of law, including the granting of summary judgment, under the de novo standard. Salve Regina College v. Russell, --- U.S. ----, ----, 111 S.Ct. 1217, 1219, 113 L.Ed.2d 190 (1991); Burdine v. Dow Chemical Co., 923 F.2d 633, 635 (8th Cir.1991). Finally, we note that the interpretation and construction of insurance policies is a matter of law, and therefore, such cases are particularly amenable to summary judgment. See Kemper Insurance Co. v. Stone, 269 N.W.2d 885, 886-87 (Minn.1978); Metalmasters of Minneapolis, Inc. v. Liberty Mutual Insurance Co., 461 N.W.2d 496, 499 (Minn.Ct.App.1990).
 
 III.
 
 17
 Deere argues that the district court erred in determining as a matter of law that NEOS and Erlandson are insureds under the Catastrophe Umbrella Liability Policy. Deere notes that the district court based its determination that NEOS was a named insured on the policy definition, which included "any other entity coming under the named insured's control over which it assumes active management," and correspondingly, that Erlandson was a named insured by virtue of his status as NEOS's employee.[8] Deere claims that the district court erroneously concluded that NEOS was controlled by Metal Craft solely by virtue of the fact that Mowry was the sole owner of both corporations. In essence, Deere contends that, "because a reasonable jury could conclude that NEOS was controlled by and under the active management of Mowry rather than Metal Craft," it was reversible error for the district court to grant summary judgment on this issue. We disagree.
 
 
 18
 We note that, under Minnesota law, "[t]he duty to defend under an insurance policy is broader than the duty to indemnify." St. Paul Fire & Marine Insurance Co. v. Briggs, 464 N.W.2d 535, 539 (Minn.Ct.App.1990) (citing Brown v. State Automobile & Casualty Underwriters, 293 N.W.2d 822, 825 (Minn.1980)). The duty to defend is established "if any part of the cause of action against the insured arguably falls within the scope of the coverage, either on the face of the complaint or from facts known to the insurer." Senger v. Minnesota Lawyers Mutual Insurance Co., 415 N.W.2d 364, 369 (Minn.App.1987).
 
 
 19
 In addition, "[a]n insurer seeking to avoid affording a defense carries a burden of demonstrating that all parts of the cause of action fall clearly outside the scope of coverage." Grain Dealers Mutual Insurance Co. v. Cady, 318 N.W.2d 247, 251 (Minn.1982) (citing Prahm v. Rupp Construction Co., 277 N.W.2d 389 (Minn.1979)). Finally, in determining whether there is a duty to defend, a court must give the benefit of the doubt to the insured. Lanoue v. Fireman's Fund American Insurance Cos., 278 N.W.2d 49, 53 (Minn.1979). As a result, unless the pleadings and facts "clearly establish that the claim falls outside the policy terms[,] ... the duty to defend arises." Id.
 
 
 20
 We agree with the district court that the facts in the instant case are such that "a reasonable jury could not conclude that NEOS is not arguably 'controlled' and 'under the active management' of Metal Craft." John Deere, 696 F.Supp. at 438-39. In addition to the fact that Metal Craft's president, Mowry, was the sole owner of NEOS and exercised complete control over the company,[9] Metal Craft originally developed and marketed the machine, which would later constitute NEOS's sole product. Because it is undisputed that Erlandson was an employee of NEOS, the district court correctly concluded that he was also a named insured under the umbrella policies.
 
 
 21
 Deere also argues that the duty to defend is subsumed within the larger single claim of coverage, and therefore, the district court erred in granting the NEOS defendants' motion for entry of judgment pursuant to Fed.R.Civ.P. 54(b), without an adjudication of the issue of indemnification. In addition, Deere argues that the district court prematurely awarded attorney's fees and other costs because the coverage issue remains to be decided. We disagree.
 
 
 22
 It is well-settled, under Minnesota law, that the duty to defend and the duty to indemnify are two issues, not one. "The duty to defend is distinct from and broader in scope than the duty to indemnify especially where a claim is arguably within the terms of policy coverage." Brown v. State Automobile & Casualty Underwriters, 293 N.W.2d 822, 825 (Minn.1980); see also Reliance Insurance Co. v. Arneson, 322 N.W.2d 604, 606 n. 1 (Minn.1982) ("The situation may therefore arise where an insurer is found obligated to defend, but upon ultimate disposition of the case it is determined that the insurer is not obligated to indemnify."). Because the duty to defend is distinct from the duty to indemnify, the district court did not err in entering partial summary judgment, nor in awarding costs and attorney's fees for the defense of this action and the underlying action.
 
 
 23
 We also reject Deere's argument that the district court erred in granting summary judgment with respect to NEOS and Erlandson because they failed to give the requisite ten-day notice under Fed.R.Civ.P. 56(c). We agree with the district court that Deere waived any right to claim prejudice under the ten-day notice rule. See Beck v. Borden, Inc., 724 F.2d 44, 45 (6th Cir.1984) (right to ten-day notice may be waived); United States v. Miller, 318 F.2d 637, 639 (7th Cir.1963) (appellant waived right to ten-day notice when she was given an opportunity to be heard after being informed of the pendency of motion for summary judgment and raised no objection); see also Oppenheimer v. Morton Hotel Corp., 324 F.2d 766, 768 (6th Cir.1963) (failure to give notice is harmless error where opposing party is not prejudiced).
 
 
 24
 The facts indicate that Deere waived the notice requirement by briefing and arguing the issue of whether NEOS and Erlandson were insureds under the insurance policies in its own motion for summary judgment. In addition, Deere did not object to NEOS and Erlandson's oral motion at the time it was made, nor did it request additional time to respond to their motion. Deere raised this objection for the first time in its motion for reconsideration, which was filed six months after the hearing on the motions for summary judgment, and after the district court had issued an extensive order that addressed the numerous arguments made at that hearing.
 
 IV.
 
 25
 In sum, we hold that the district court did not err in determining that Deere owed the NEOS defendants a duty to defend them in the underlying action, in awarding them attorney's fees, costs and expenses for both the underlying action and the instant declaratory judgment action, and in entering final judgment under Fed.R.Civ.P. 54(b). We also hold that Deere waived its right to ten-day notice under Fed.R.Civ.P. 56(c).
 
 
 26
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable David S. Doty, United States District Judge for the District of Minnesota
 
 
 [2]
 Metal Craft purchased six insurance policies from Deere, which the district court numbered I through VI. The policies had the following titles:
 Policies I and II: Special Multi-Peril Policy
 Policies III and IV: Catastrophe Umbrella Liability Policy
 Policy V: Commercial General Liability Coverage Form
 Policy VI: Special Commercial Umbrella Liability Policy
 See John Deere Ins. Co. v. Shamrock Indus., Inc., 696 F.Supp. 434, 436 (D.Minn.1988) (John Deere ).
 
 
 [3]
 Shamrock admitted in its answer that it had no claim to coverage under the Deere policies, and Cardinal did not answer the declaratory judgment action, electing to let the matter go by default. On October 19, 1988, the district court granted Deere's motion for summary judgment with respect to Cardinal. That ruling was not appealed
 
 
 [4]
 The insuring agreement of the Special Multi-Peril Policy provided: "The company will pay ... all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury ... and the company shall have the right and duty to defend any suit against the insureds seeking damages on account of such injury...." Joint Appendix at 95. The insuring agreement of the Catastrophe Umbrella Liability Policy contained a provision for the indemnification of advertising liability, which included "damages because of libel, slander, defamation, infringement of copyright, title or slogan, piracy, unfair competition, idea misappropriation ... arising out of the named insured's advertising activities ... [and] the company shall ... defend any suit against the insured alleging such injury." Id. at 189
 
 
 [5]
 The district court determined that Deere had no duty to defend any of the NEOS defendants under the Commercial General Liability Coverage Form (policy V) or the Special Commercial Umbrella Liability Policy (policy VI), based on a policy provision contained in each that excluded any advertising injury where the advertising injury was first published before the effective date of the policy. The district court concluded: "It appears from the facts before the Court that the first publication arguably constituting advertising activity did occur prior to the coverage of policies V and VI, therefore the exclusion applies to remove Deere from any responsibility to defend or indemnify defendants under policies V and VI." John Deere, 696 F.Supp. at 440-41
 
 
 [6]
 The district court awarded a total of $241,770.55 in costs, disbursements and attorney's fees, plus $13,192.18 in pre-judgment interest, minus the $10,000.00 retained limit provided for in the umbrella policies
 
 
 [7]
 On June 30, 1989, Shamrock and the NEOS defendants settled the underlying action, and filed a Stipulation of Dismissal with Prejudice as to their claims and counterclaims in that action
 
 
 [8]
 The Catastrophe Umbrella Liability Policy further defined "insured" as, "except with respect to the ownership, maintenance or use, including loading or unloading of automobiles or aircraft, (1) any executive officer, other employee, director or stockholder thereof while acting within the scope of his duties as such." Joint Appendix at 201
 
 
 [9]
 Mowry and a Metal Craft secretary were the only directors of NEOS