**MICROTEC RESEARCH, INC.; Jerry Kirk, Plaintiffs–Appellants,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY; St. Paul Fire & Marine Insurance Company, Defendants–Appellees.**

No. 93–16543.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1994.

Memorandum Aug. 31, 1994.

Order and Opinion Nov. 18, 1994.

Denise Trani–Morris, McClintock & Quadros, San Mateo, CA, for plaintiffs-appellants.

Stephan A. Barber, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, San Jose, CA, for defendant-appellee St. Paul Fire & Marine Ins. Co.

William C. Wilka, Gordon & Rees, San Francisco, CA, for defendant-appellee Nationwide Mut. Ins. Co.

Before CHOY, LEAVY and KLEINFELD, Circuit Judges.

### ORDER

The memorandum decision filed on August 31, 1994, is redesignated as an authored opinion by Judge Kleinfeld with minor modifications.

### OPINION

KLEINFELD, Circuit Judge:

### I. OVERVIEW

Microtec bought liability insurance from Nationwide Mutual Insurance and from St. Paul Fire & Marine Insurance Company. These policies covered, among other things, the defense of suits based on advertising or personal injury. Green Hills Software, Inc. sued Microtec, basically for passing off Green Hills' code as Microtec's. Microtec tendered defense of the suit to Nationwide and St. Paul. The insurance companies denied coverage and Microtec sued. The district court determined on summary judgment that the insurers did not owe Microtec a duty to defend against the Green Hills suit. Microtec appealed. We affirm.

### II. FACTS

Though the two insurance policies at issue here use different language in some respects, the coverage and exclusions of each are materially similar in all aspects relevant to this appeal. In essence, advertising injury was defined under the policies as injury occurring in the course of Microtec's advertising activities if the injury arose out of defamation, invasion of privacy, piracy, unfair competition, or infringement of copyright. The coverage excluded advertising injury arising out of breach of contract, infringement of trademark and wrong description of goods.

Nationwide insured Microtec from 1985 to 1990 under two separate policies. The first policy, effective July 10, 1985 through July 10, 1987, is irrelevant. Microtec admits it did not begin to promote or advertise its products until 1989. Brief of Appellant at 11, ¶¶ 18–22. Since coverage could not have been triggered under the advertising injury or personal injury clauses until Microtec advertised or published material about its compilers and Green Hills' compilers, Nationwide had no duty to defend under the 1985–1987 policy.

The second Nationwide policy, in effect from July 10, 1987 through April 1, 1990, is relevant to this dispute. That policy defines "advertising injury" as

injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right to privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

"Personal injury" is defined as

injury, other than "bodily injury" arising out of one or more of the following offenses:

.    .    .    .    .

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services....

The St. Paul policy, in effect from April 1, 1990 through April 1, 1992, defines "advertising injury" as

injury caused by any one of the following offenses that result from the advertising of your products or work:

*libel or slander;

*written or spoken material made public which belittles the products or works of others;

*written or spoken material made public which violates an individual's right of privacy;

*unauthorized taking of advertising ideas or style of doing business;

*infringement of copyright, title or slogan.

It defines "personal injury" as

injury, other than bodily injury, caused by any of the following offenses that result from your business activities other than advertising, broadcasting, publishing or telecasting done by or for you:

   .    .    .    .    .

*libel or slander;

*written or spoken material made public which belittles the products or works of others....

The essence of the underlying dispute between Green Hills and Microtec was Green Hills' assertion that Microtec passed off Green Hills' compiler code as Microtec's own. The complaint asserts a broad range of claims, including: (1) false designation of origin; (2) unfair competition; (3) breach of contract; (4) misappropriation of trade secrets; (5) intentional interference with prospective economic advantage; (6) breach of confidence; (7) declaratory relief; and (8) fraud. As discussed below, the complaint does not allege advertising injury or any kind of defamation which could be covered under the two insurance policies.[1]

### III. ANALYSIS

■ Because the district court ruled against Microtec on summary judgment, we review the arguments *de novo*. *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). To that end, we must determine, viewing the evidence in the light most favorable to Microtec, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

### 1. Advertising Injury

■ If the Green Hills lawsuit claimed damages within the advertising injury clause of the policies, then Nationwide and St. Paul would have been obligated to defend it. But it did not. The complaint alleged that Microtec passed off code created by Green Hills as though Microtec had written it, not that Microtec made disparaging statements about Green Hills in advertisements, or used Green Hills' copyrighted material such as jingles in advertisements.

Microtec correctly points out to us that even if misappropriation of intellectual property is the primary focus of Green Hills' complaint, nevertheless Microtec was entitled to defense if Green Hills also included a claim which fell within the advertising injury or personal injury coverage. The claim which Microtec argues makes a covered claim is paragraph 32(C) of Green Hills' complaint. The paragraph claims irreparable harm if Microtec is not enjoined, based on three subparagraphs. Subparagraph A quotes Microtec's contractual stipulation regarding the harm which improper disclosure of Green Hills' code will do. Subparagraph B says Microtec has been selling compilers to Green Hills' customers, enticing them away from Green Hills. Subparagraph C, upon which Microtec relies, says that Microtec's passing off the compilers as original will mislead customers into thinking that Microtec has as much or more technical skill as Green Hills:

The market for compilers and similarly sophisticated computer software is extremely competitive and rapidly changing. In order to succeed commercially, an entity that licenses such software must be, and must appear to be, in the forefront of new developments and ahead of its competitors. By developing the Licensed Source and other sophisticated software, Plaintiff has earned a reputation in the computer software market for being such a market lead-

---

1. The underlying action has been resolved. On June 23, 1993, Green Hills settled its case against the Microtec and Jerry Kirk.

er. Defendants, by marketing Plaintiff's and Microtec's compilers under Microtec's name, threatened that reputation by representing that Microtec has independently developed compilers that equal or surpass those of Plaintiff. Defendants' acts undermining Plaintiff's reputation may impede Plaintiff's future ability to market new software programs.

This paragraph uses some words, such as "marketing," "threatened that reputation," and "representing," which seem, if taken in isolation, to suggest a claim for advertising injury. But read in context, they do not. Green Hills did not aver that Microtec had said anything negative about Green Hills. It does not allege that Microtec used stolen code in its ads, as one might use a copyrighted piece of music in an ad. In context, the averment means that Microtec misled customers into thinking Microtec was capable of writing leading edge compiler code as good as Green Hills'. The harm, though, is allegedly caused by misappropriation of the code, not by the advertising itself. This averment does not say that Microtec falsely advertised that Green Hills' code had bugs, or was slower than Microtec's code. Actually, Microtec did advertise that its code was faster than Green Hills' code, but Green Hills carefully avoided suing Microtec for damages arising out of those advertisements, as we discuss below. Under controlling California law, this is not an "advertising injury" or "personal injury claim."

The recent California Supreme Court decision in *Bank of the West* controls. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 10 Cal.Rptr.2d 538, 553, 833 P.2d 545, 560 (1992). It is now the clearly established law in California, which controls this diversity action, that the injury for which coverage is sought must be caused by the advertising itself. If the tortfeasor does some wrongful act and then advertises it, harm caused by the wrongful act alone is not within the scope of the term advertising injury. For example, a claim of patent infringement does not fall within the advertising injury coverage, "even though the insured advertises the infringing product, if the claim of infringement is based on the sale or importation of the product rather than its advertisement." *Id.* at 552, 833 P.2d at 559. This express language from

*Bank of the West* controls. Green Hills sued Microtec for selling a misappropriated product in violation of the contract between them.

Several recent cases have applied the *Bank of the West* analysis and concluded that advertising injury coverage does not apply to misappropriation of intellectual property claims such as the one by Green Hills. *See Iolab Corp. v. Seaboard Surety Co.*, 15 F.3d 1500, 1505 (9th Cir.1994) (holding that underlying patent infringement did not give rise to coverage under "advertising injury" clause); *Intex Plastics Sales Co. v. United Nat'l Ins. Co.*, 23 F.3d 254, 256 (9th Cir.1994) (same).

Microtec did produce advertisements which arguably disparaged Green Hills' by claiming that Microtec's code was faster than Green Hills' code. Green Hills knew about the advertisements before it filed suit, perhaps could have sued for disparaging the speed of its compiler, but did not. The complaint conspicuously and carefully omits to allege any wrongdoing with respect to these advertisements. If Microtec had been able to establish that it faced potential liability for those advertisements, it might have arguably had a claim against its insurers under *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal. Rptr. 104, 112, 419 P.2d 168, 176 (1966) ("courts do not examine only the pleaded word but the potential liability created by the suit."). Unlike the situation to which the "potential liability" language of *Gray* applies, here there was no potential liability based on the possible disparagement in these advertisements, because Green Hills elected not to make that claim. Nor did Microtec produce any evidence on summary judgment that Green Hills had suffered damages because of the advertisements, so that it could prove the elements of such a claim.

Green Hills might have elected not to make this claim, because it did not want to have to risk that Microtec might prove in public that its compiler really was faster. It might have chosen not to sue Microtec for the advertisements for any number of reasons. Whatever Green Hills' reasons were for omitting a claim based on Microtec's advertising, it remains the law of California that when the underlying suit raises no potential for a liability covered by the policy, the insurance company's duty to defend is not triggered. *Aetna Cas. & Sur. Co., Inc. v.*

*Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir.1988) (construing California law). This is such a case.

### 2. Personal Injury

■ Microtec's theory for coverage under the policies is that hurting Green Hills' reputation by passing off Green Hills' code as Microtec's own amounted to libel, disparagement or belittlement. Damage to reputation, though, is only one element of any of these torts. All require as an additional element, a statement. *See* Black's Law Dictionary 422, 824, 1244 (5th ed. 1979). Green Hills does not aver that Microtec made a statement which disparaged Green Hills' reputation. They just allege damage to reputation as a consequence of losing its control of and credit for its compiler code.

### a. Libel or Slander

The defamatory torts of libel and slander are different than trade libel. *Leonardini v. Shell Oil Co.*, 216 Cal.App.3d 547, 264 Cal. Rptr. 883, 899 (1989). The difference between the two types of actions is that an " 'action for defamation is designed to protect the *reputation* of the plaintiff, and the judgment vindicates that reputation, whereas the action for disparagement is based on *pecuniary damage* and lies only where such damage has been suffered.' " *Id.*

The closest the underlying complaint gets to alleging libel or slander is its allegation that Microtec, "by marketing Plaintiff's and Microtec's compilers under Microtec's name, threaten[s] that reputation by representing that Microtec has independently developed compilers that equal or surpass those of Plaintiff." (ER tab 34 at 22). The complaint does not allege Microtec made any false statements about Green Hills, only that Microtec was falsely representing that it developed the compilers independently. This court has previously held that where the gravamen of an underlying complaint is that the defendant "palmed off" the plaintiff's product, it does not give rise to coverage under a policy that protects against libel and slander. *Aetna Casualty & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir.

1988) (interpreting California law). Green Hills did not allege Microtec made any statements that could be construed as libelous or slanderous under the advertising injury or personal injury clauses.

### b. Disparagement or Belittlement

The same is true for Microtec's claim for coverage on the theory that Green Hills' complaint alleged Microtec disparaged or belittled its compilers under the personal injury clause. "Disparage" and "belittle" are not defined terms in the policies. Microtec claims that applying the plain dictionary meaning to the terms, the Green Hills complaint alleges that Microtec disparaged or belittled Green Hills and its products by advertising that Microtec's products were better. Microtec also argues that the term "belittle" as used in the St. Paul policy is broader than the term "disparage" despite its contention before the district court that the terms were identical. (*See* ER tab 69 at 8:1–5). The only statements Microtec made which might arguably disparage or belittle Green Hills were in the advertisements saying its compilers were faster, but Green Hills did not sue Microtec for these statements.

■ The terms disparage and belittle used in the policies are meant to cover claims that arise under trade libel. Trade Libel is defined as " 'an intentional disparagement of the quality of property, which results in pecuniary damage.' " *Aetna Casualty & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir.1988) (quoting *Erlich v. Etner*, 224 Cal.App.2d 69, 36 Cal.Rptr. 256, 258 (1964)). It is more akin to unfair competition than to true libel, and is not actionable as defamation. *Id.*

■ The Green Hills complaint does not state a claim for trade disparagement for the same reason it does not state a claim for slander or libel. The claims raised were that Microtec "palmed off" Green Hills' compilers, not that Microtec made a false or injurious statement about the quality of Green Hills' compilers. *See Aetna*, 838 F.2d at 351–52; *see also Nichols v. Great Am. Ins. Cos.*, 169 Cal.App.3d 766, 215 Cal.Rptr. 416, 418–20

(1985) (defining trade libel and holding that insurer had no duty to defend).

AFFIRMED.