Before MURPHY and ROSS, Circuit Judges, and VAN SICKLE, District Judge.[*]

PER CURIAM.

Kenneth Kasden filed for protection under Chapter 7 of the Bankruptcy Code in August 1994, and identified property located in Edina, Minnesota as exempt homestead property. Steiner and Saffer, which is a judgment creditor of Kasden, filed an objection to his claimed homestead exemption,[1] arguing that Kasden had lost his homestead exemption to the property when he ceased to occupy it for more than six months without filing notice as required by Minnesota Statute § 510.07. Kasden has not resided on the property since it was damaged extensively by fire in November 1993 and has not filed a homestead notice with the county recorder.

The bankruptcy court denied the objection of Steiner and Saffer on two grounds: that a person forced from homestead property due to casualty has not ceased to occupy it within the meaning of the statute, and that Kasden physically occupied the property, albeit not as a residence. The district court[2] reversed and remanded on the basis that Minnesota law does not recognize a casualty exception to statutory abandonment, *Joy v. Cooperative Oil Ass'n*, 360 N.W.2d 363, 366 (Minn.Ct. App.1984) (en banc), *review denied* (Minn. March 6, 1985) (owner absent from property more than six months due to destruction of premises by fire lost homestead exemption when he failed to file notice), and requires that a property owner occupy the property as a residence to maintain a homestead exemption.

After careful review of the record before us and the arguments raised, we conclude the district court correctly resolved the issues. The order is affirmed. *See* 8th Cir.R. 47B.

---

**SIMPLY FRESH FRUIT, INC., a California corporation; P & C Services, Inc., a California corporation, Plaintiffs–Appellants,**

v.

**The CONTINENTAL INSURANCE COMPANY, a New Hampshire corporation, Defendant–Appellee.**

No. 94–56061.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1996.

Memorandum Filed March 8, 1996.

Order and Opinion Filed May 30, 1996.

---

[*] The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota, sitting by designation.

Edouard V. Rosa, Huebner & Rosa, Los Angeles, California, for plaintiffs-appellants.

James H. Wilkins, Robert K. Landen, McCormick, Barstow, Sheppard, Wayte & Carruth, Fresno, California, for defendant-appellee.

Before: POOLE, WIGGINS and RYMER, Circuit Judges.

## ORDER

The appellee's request for publication pursuant to Ninth Cir. R. 36–2 is **GRANTED**. Thus, the memorandum disposition filed March 8, 1996 is hereby redesignated as an authored opinion by Judge Cecil F. Poole.

## OPINION

POOLE, Circuit Judge:

### OVERVIEW

Simply Fresh Fruit, Inc. and P & C Services, Inc. (collectively "Appellants") appeal the district court's grant of summary judgment in favor of their insurer, Continental Insurance Company, on their complaints for breach of contract and the implied covenant of good faith and fair dealing. The district court found that Continental did not have a duty to defend Simply Fresh and P & C in two earlier actions brought by a third-party for misappropriation of trade secrets and patent infringement. Applying California law, the district court held that the underlying actions were not covered under the "advertising injury" provision of the appellants' insurance policies. We affirm.

### I.

Simply Fresh is in the business of processing and selling fresh fruit and fruit segments for use in salads and similar products. At the time the lawsuits at issue here arose, Simply Fresh had engaged the services of P & C as its primary processing facility for its fruit products. Simply Fresh and P & C held separate insurance contracts with Continental whereby the insurer agreed to defend and indemnify them for injuries suffered as a result of their business advertising activities.

Under the policy terms, coverage extended to "advertising injury" only if caused by an offense committed: (1) in the "coverage territory" during the policy period; and (2) in the course of advertising their goods, products or services. Further, for purposes of coverage, the relevant provisions defined "advertising injury" to include any "misappropriation of advertising ideas or style of doing business."

During the time the policies were in effect, one of Simply Fresh's competitors, Reddi–Made Foods Company, Inc. ("Reddi–Made"), filed three lawsuits (collectively "the underlying actions") against Simply Fresh and P & C. The first action was filed in California state court and contained allegations of: (1) misappropriation of trade secrets, (2) breach of contract, (3) violation of the Uniform Trade Secrets Act, and (4) intentional interference with economic advantage. The second and third actions were filed in federal district court and, once consolidated, alleged claims for patent infringement, contributory infringement and inducing infringement.

The gravamen of Reddi–Made's state court action was that Simply Fresh and P & C had misappropriated its secret automated process for slicing fruit. The allegations underlying this complaint were that a former mechanic for Reddi–Made, while still employed by Reddi–Made, began to build an identical fruit cutting system and production line for Simply Fresh. Subsequently, Simply Fresh hired another ex-employee of Reddi–Made's, who allegedly solicited a third Reddi–Made employee to steal various parts from the processing system. At all times during these events, the Reddi–Made employees were parties to confidentiality agreements. Reddi–Made's complaint alleged that as a result of this misappropriation of its trade secrets, Simply Fresh was able to significantly cut its production costs and effectively destroy Reddi–Made's economic advantage.

In the federal actions, Reddi–Made alleged that Simply Fresh and P & C infringed its patents in the fruit-cutting device and processes by using them in their manufacturing operations. Further, Reddi–Made alleged that Simply Fresh had induced and contributed to P & C's infringement of its patented cutting devices and operating processes. Although not included in the allegations in Reddi–Made's complaints, appellants admit that they would on occasion give prospective and current customers tours of their newly automated processing facilities in order to highlight the improved quality of their fruit products.

Simply Fresh and P & C tendered the defense of both the federal and state actions to Continental. Continental refused the tendered defenses and denied coverage. Subsequently, Reddi–Made and the appellants settled the underlying actions, which were dismissed with prejudice. This diversity action pursuant to 28 U.S.C. § 1332 between the insurer and the appellants followed.

On April 18, 1994, Continental filed a motion for summary judgment or partial summary judgment. Simply Fresh and P & C filed an opposition on June 6, 1994, and subsequently filed cross-motions for summary judgment on June 16, 1994. All the motions were scheduled to be heard on July 11, 1994; however, the motions were removed from the calendar and taken under submission by the district court prior to the scheduled hearing date.

On June 28, 1994, the district court granted Continental's motion for summary judgment, and found that the summary judgment in favor of Continental rendered the cross-motions moot. This timely appeal followed, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

II.

We review a district court's grant of summary judgment de novo. *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). Our task is to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

III.

Relying on the express policy language and the undisputed fact that the policies were in effect at all times relevant to this litigation, the district court found that, under California law, Continental had no duty to defend either the state trade secret action or the federal patent claim. The district court based its conclusion on the California Supreme Court's interpretation of the scope of "advertising injury" coverage expressed in *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992).

■ In *Bank of the West,* the California Supreme Court held that any " 'advertising injury' must have a causal connection with the insured's 'advertising activities' before there can be coverage." 2 Cal.4th at 1277, 10 Cal.Rptr.2d 538, 833 P.2d 545. We address the district court's application of *Bank of the West* to each of the underlying actions in turn. We note preliminarily, however, that we agree with the district court's conclusion that under the clear language of the policies, coverage is provided for " 'advertising injury' only if it was committed by Simply/P & C [sic] in the course of advertising their goods, products or services." In other words, any of the policy's enumerated advertising injuries must be *caused by* Simply Fresh's or P & C's advertising in order to satisfy *Bank of the West*'s nexus requirement. *See Bank of the West,* 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (a "court must interpret the language in context, with regard to its intended function in the policy.").

## A. The State Misappropriation of Trade Secrets Claims

■ We note from the outset that the duty to defend is broad in California. *See Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 276, 54 Cal. Rptr. 104, 419 P.2d 168 (1966)("courts do not examine only the pleaded word but the potential liability created by the suit."). However, the seminal *Gray* case added the caveat that "the insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Id.* at 275 n. 15, 54 Cal.Rptr. 104, 419 P.2d 168.

Simply Fresh and P & C assert that Reddi–Made's state law misappropriation of trade secrets claims alleged facts that could potentially give rise to claims for trade dress infringement, false designation of origin in violation of the Lanham Act, and common law unfair competition.[1] Further, they argue, any of these potential claims could rea-

sonably fall within the "misappropriation of style of doing business" language of the policy, thus triggering Continental's duty to defend.

Even if we accept the appellants' argument, our recent decision in *Microtec Research Inc., et al. v. Nationwide Mutual Ins. Co., et al.,* 40 F.3d 968 (9th Cir.1994), would compel us to affirm the district court's finding that the allegations in the trade secret action did not arise in the course of Simply Fresh's advertising activities. The allegations in the underlying dispute in *Microtec* were virtually identical to those asserted by Reddi–Made. *Id.* at 970 (complaint included claims for *inter alia,* breach of contract, misappropriation of trade secrets, intentional interference with prospective economic advantage). Although the insured in *Microtec* allegedly "passed off," or advertised, its competitor's intellectual property as its own, we noted that "[t]he complaint conspicuously and carefully omit[ted] to allege any wrongdoing with respect to [Microtec's] advertisements." *Id.* at 971 ("If Microtec had been able to establish that it faced potential liability for those advertisements, it might have arguably had a claim against its insurers under *Gray* [citations and internal quotations omitted] .... [however] there was no potential liability based on these .... advertisements, because Green Hills elected not to make that claim."). As we went on to note in *Microtec,* the "harm ....is allegedly caused by misappropriation of the [trade secret], not by the advertising itself." *Id.* ·

Appellants produced *no evidence on summary judgment that Reddi–Made had suffered damages because of their advertising in order to prove the elements of any such claim. Thus, the appellants' argument utterly fails to address the correct causation requirement under the language of the policy and California law.[2]

---

1. Indeed, the appellants assert that when the defenses were tendered to Continental, Reddi–Made could at any time have amended its complaint to include such claims. As we discuss *infra,* however, under our decision in *Microtec,* even if these specific causes of actions could have

been added, no potential coverage would exist under the advertising injury clause.

2. The appellants draw our attention to the recent case of *Sentex Systems v. Hartford Accident and Indemnity Co.,* 882 F.Supp. 930 (C.D.Cal.1995), which addressed a similar insurance coverage

## B. The Federal Patent Infringement Claims

■ The appellants argue that the *Bank of the West* causal nexus requirement is satisfied here because their alleged use of Reddi–Made's patented devices and processes occurred in concert with the advertising and promotion of their fruit products. This argument is flawed for two reasons.

First, we have previously held that, as a matter of law, patent infringement cannot occur in the course of an insured's advertising activities. *See, e.g., Iolab Corp. v. Seaboard Surety Co.,* 15 F.3d 1500, 1505 (9th Cir.1994)(holding that infringement claim based on manufacture and sale of patented lens did not arise out of the insured's advertising activities under *Bank of the West );* *Everest and Jennings, Inc. v. American Motorists Ins. Co.,* 23 F.3d 226, 229 (9th Cir.1994)(drawing same conclusion based on policy language identical to that used in the case at bar); *see also New Hampshire Ins. Co. v. R.L. Chaides Construction Co.,* 847 F.Supp. 1452, 1456–57 (N.D.Cal.1994)(holding that patent infringement cannot be committed in the course of advertising activities).

Here, Reddi–Made's federal claims for direct, contributory and inducing infringement all accrued when Simply Fresh and P & C allegedly used its patented devices and processes. This injury has no causal connection to any advertising activities as a matter of law because it could have occurred independent and irrespective of any advertising by the appellants. That Simply Fresh exploited its alleged use of the patented processes in conjunction with its product promotional activities is immaterial. The gravamen of the patent infringement claim is the *use* alone.

*See, e.g, Iolab,* 15 F.3d at 1506 ("a patent is infringed by making, using, or selling a patented invention, not by advertising it"); *Everest,* 23 F.3d at 229 ("the statutory definition of patent infringement [under 35 U.S.C. § 271(a) ] refers only to the making, using or selling of a product").

Second, the appellants' argument would lead this court to a finding that when the alleged infringement (e.g.use) of a patented process constitutes a form of advertisement, the causal nexus of *Bank of the West* is satisfied. As such, they argue, an insurer cannot avoid its contractual duty to defend.

However, this argument ignores the plain language of the policy. Appellants maintain, in effect, that because they exposed their alleged infringement of Reddi–Made's patented processes through their product promotion, their conduct falls within the coverage of Continental's policy. As noted, however, under the policy, the *advertising activities* must *cause* the injury-not merely expose it. *Accord Iolab,* 15. F.3d at 1507 (noting that insured failed to show that patent holder's loss was caused by its advertising, rather than its infringement); *Everest,* 23 F.3d at 229 (noting that patentee's claim never asserted that infringement occurred because of insured's advertising); *Microtec,* 40 F.3d at 971 ("It is now the clearly established law in California ·....that the injury for which coverage is sought must be caused by the advertising itself."). We therefore agree with the district court that the appellants' advertising activities did not cause the injuries alleged in Reddi–Made's federal patent infringement claims.

---

dispute involving an underlying action with striking factual similarity to Reddi–Made's state court action. The *Sentex* court held that the misappropriation of a competitor's trade secrets by a former employee for use in the promotion of the insured's products raised a potential for liability under the covered offense of "misappropriation of advertising ideas or style of doing business." *Id.* at 944. We do not find the *Sentex* court's reasoning persuasive for two reasons. First, it disregards our conclusion in *Microtec* that "the injury for which coverage is sought must be caused by the advertising itself." *See Microtec,* 40 F.3d at 971. In *Sentex,* as here, the misappropriation of trade secrets occurred prior to any advertisement of products or services. Simply stated, the advertising did not cause the misappropriation. Second, the *Sentex* court relies heavily on case law from another federal district which, as noted by the California Supreme Court, did not resolve the issue of the causal connection between "advertising injury" and "advertising activities." *See Bank of the West,* 2 Cal.4th at 1275, 10 Cal.Rptr.2d 538, 833 P.2d 545 (discussing *John Deere Ins. Co. v. Shamrock Industries, Inc.,* 696 F.Supp. 434, 440 (D.Minn. 1988), *aff'd* 929 F.2d 413 (8th Cir.1991)). Now that the issue has been conclusively resolved by the California Supreme Court, that resolution must control.

## IV.

Based on the foregoing discussion, we hold that Continental had no duty to defend Simply Fresh and P & C in Reddi–Made's state trade secret or federal patent infringement suits under the advertising injury provisions of their insurance policies. The judgment of the district court is **AFFIRMED**.