MEMORANDUM **
UMG Recordings, Inc. appeals the district court’s grant of summary judgment in favor of American Home Insurance Company (American). The district court concluded that American did not have a duty to defend Island Def Jam Music Group, a division of UMG, from a suit filed against Def Jam by TVT Records, Inc. and TVT Music, Inc. TVT’s suit against Def Jam arose from a contract dispute between Def Jam and TVT concerning the right to pro *554 duce and market recorded music performances by a rap group known as Cash Money Click (CMC). TVT alleged, inter alia, claims for copyright infringement and breach of contract arising out of Def Jam and its president Lyor Cohen’s alleged intentional interference with TVT’s release of the CMC Album by inducing two of the artists in CMC to withhold the master recording of the CMC Album from TVT. The district court held that under American’s commercial general liability insurance policies, TVT’s complaint did not trigger American’s duty to defend TVT’s suit against Def Jam because it did not allege “property damage” or “personal and advertising injury.” UMG challenges that ruling, contending that TVT alleged both “property damage” and “personal and advertising injury.” It also challenges the district court’s dismissal of its bad faith and punitive damage claims against American. We affirm.
Because the district court ruled against UMG on summary judgment, we conduct a de novo review of the arguments. Microtec Research, Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968, 970 (9th Cir.1994). We view the evidence in the light most favorable to UMG, and determine whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. Id. This is a diversity action and therefore governed by state substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Neither party disputes the district court’s choice of law analysis or its conclusion that California law applies to resolve the substantive claims in this appeal.[1] Therefore, we decide this appeal under California law.
“[T]he [insurance] carrier must defend a suit which potentially seeks damages within the coverage of the policy....” Gray v. Zurich Ins. Co., 65 Cal.2d 263, 54 Cal. Rptr. 104, 419 P.2d 168, 176 (1966). The duty to defend is broader than the duty to indemnify. Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 846 P.2d 792, 795 (1993).
[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.
Waller v. Truck Ins. Exch., Inc., 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619, 627 (1995).
The district court properly concluded that UMG was not entitled to a defense under the “property damage” clause of American’s policies. The policies provide coverage for an “occurrence” that results in property damage. An “occurrence” is defined as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” California courts have held that for there to be an accident, the cause, as well as the result, must be unexpected, unusual, and unforeseen. Merced Mut. Ins. Co. v. Mendez, 213 Cal.App.3d 41, 261 Cal.Rptr. 273, 279 (1989). “An accident ... is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage.” Id. Stated conversely, where damage is the direct and immediate result of an intended or expected event, there is no accident. Shell Oil Co. v. Winterthur Swiss Ins. Co., *555 12 Cal.App.4th 715, 15 Cal.Rptr.2d 815, 838 (1993). Here, TVT alleged in its complaint that Def Jam and Cohen withheld the master recording of the CMC Album, which is an intentional act.
UMG argues that even if Def Jam and Cohen intentionally withheld the master recording, they did not intend to harm TVT, but rather intended to benefit themselves. Irrespective of the motive, the harm was reasonably expected as a result of the act. Because the damage is the direct and immediate result of an intended or expected event, there was no “occurrence” to trigger coverage under the “property damage” clause. See id.
UMG also contends that even if Cohen acted intentionally, there was an “occurrence” with respect to Def Jam because its Board of Directors never authorized or ratified Cohen’s acts. UMG relies on Dart Industries, Inc. v. Liberty Mutual Insurance Co., 484 F.2d 1295, 1298-99 (9th Cir.1973), and on several California cases for the proposition that intentional acts taken by an agent do not preclude insurance coverage for the principal. But these cases are inapposite because they address whether the public policy exception under California Insurance Code section 533 excludes coverage, not whether certain acts were covered under the policy in the first place.
The district court also properly concluded that, as a matter of law, UMG was not entitled to a defense under the “personal and advertising injury” clause of the policies. First, UMG argues that TVT’s allegation that the Irv Gotti CD “announces the upcoming release of the CMC Album in November 2002” makes the Irv Gotti Album itself an “advertisement.” Since the CD was alleged to infringe TVT’s copyright, UMG argues that the distribution of the CD constituted an “advertising injury.” But the policies define “advertisement” as “notice that is broadcast or published to the general public or specific market segments about your goods, products or services” and “advertising injury” as “the use of another’s advertising idea” or “infringing upon another’s copyright, trade dress or slogan in your ‘advertisement.’ ” (Emphases added.) Here, the CMC Album was not UMG’s good. Rather, the complaint states that TVT maintained ownership rights to the CMC Album. Because the allegation did not concern UMG’s good, there was no potential coverage under the “advertising injury” clause of the policies.
Second, UMG contends that TVT’s allegation that Def Jam “mischaracterized to the Artists [Ja Rule and Irv Gotti] TVT’s efforts to protect TVT’s rights to put out the CMC Album” is “disparagement of goods, products, or services” to qualify as a “personal injury.” “Disparagement” has been held to include “statements about a competitor’s goods, products, or services that are untrue or misleading and are made to influence potential purchasers not to buy.” Atl. Mut. Ins. Co. v. J. Lamb, Inc., 100 Cal.App.4th 1017, 123 Cal.Rptr.2d 256, 269 (2002). Unlike classic defamation, which concerns damage to reputation, disparagement in insurance policies is meant to cover claims that arise under trade libel, which concerns “quality of property [that] results in pecuniary damage.” Microtec Research, Inc., 40 F.3d at 972 (internal quotation marks omitted) (emphasis added). Here, the statement that Def Jam mischaracterized something to the artists about TVT’s efforts to protect its own rights does not concern TVT’s goods or products. Neither does it state any inadequacy about TVT’s services to the artists. The allegation is so vague it is hard to say exactly what it means, but at most it merely alleges that TVT will not stand on its *556 own rights, which is not disparagement of TVT’s services.[2]
Alternatively, UMG contends that TVT alleged personal injury in the form of slander of TVT when it stated that Def Jam “mischaracterized to the Artists [Ja Rule and Irv Gotti] TVT’s efforts to protect TVT’s rights to put out the CMC Album” and that Def Jam’s actions caused the loss of TVT’s “good will and reputation.” UMG mentions this argument only in passing, contending that the “District Court ignored that ‘personal and advertising injury’ exists when there is ‘[o]ral or written publication of material that slanders or libels a person or organization.’ ” The district court did not consider this argument because it was not argued below. UMG shows no exceptional circumstances justifying its failure to raise the argument. Therefore, UMG’s slander argument is deemed waived. Monetary II Ltd. P’ship v. Comm’r, 47 F.3d 342, 347 (9th Cir.1995).
Even if we would consider the argument in the first instance, it is dubious whether these statements would be enough to allege slander. Under California law, slander is “a false and unprivileged publication, orally uttered” and must be one of five specific kinds of statements. Cal. Civil Code § 46. Here, the allegation that UMG “mischaracterized to the Artists TVT’s efforts to protect TVT’s rights to put out the CMC Album” does not state what the specific statement was. Therefore, we cannot tell whether it is one of the five kinds of statements that would qualify as slander.
Having determined that the policies do not cover the allegations in the TVT complaint, we must conclude that American did not breach the implied covenant of good faith and fair dealing by failing to undertake the defense of TVT’s suit. Am. Med. Int’l, Inc. v. Nat’l Union Fire Ins. Co. of Pittsburgh, 244 F.3d 715, 719-20 (9th Cir.2001) (citing Waller, 44 Cal. Rptr.2d 370, 900 P.2d at 639) (“[W]here there is no coverage of any kind under an insurance contract, the insured may not hold the insurer liable for breach of the implied covenant of good faith and fair dealing.”). Likewise, having concluded that American did not breach its implied covenant of good faith and fair dealing, we must also conclude that there can be no claim for punitive damages for failure to defend under an insurance policy. Tibbs v. Great Am. Ins. Co., 755 F.2d 1370, 1375 (9th Cir.1985) (requiring breach of implied covenant of good faith and fair dealing in order to recover punitive damages under California law).
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. In its brief UMG cites New York law, in addition to California law, but it does not contend that New York law differs from Cali-forma's on the substantive issues at stake in this appeal, nor does it contest the district court's decision to apply California law.

. The dissent relies on Atlantic Mutual Insurance Co. v. J. Lamb, Inc., 100 CaI.App.4th 1017, 123 Cal.Rptr.2d 256, 269-72 (2002), but Atlantic Mutual is distinguishable from this case. In Atlantic Mutual, Continental's complaint against Lamb alleged that Lamb was intentionally communicating with Continental's customers and falsely stating to them that Continental was selling products that were subject to Lamb's prior patent claim. Id. at 269. Such allegation is disparagement of a product or service because it concerned Continental's legal right to sell its product. Here, the complaint does not aver anything about TVT's services.