**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HUDSON INSURANCE COMPANY, a
Delaware Corporation,
          *Plaintiff-Appellee,*

          v.

COLONY INSURANCE COMPANY, a
Virginia Corporation,
          *Defendant-Appellant.*

No. 09-55275

D.C. No.
5:07-cv-01497-SGL-
OP

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen G. Larson, District Judge, Presiding

Argued and Submitted
April 5, 2010—Pasadena, California

Filed November 5, 2010

Before: Harry Pregerson and Robert R. Beezer,
Circuit Judges, and James L. Graham, District Judge.*

Opinion by Judge Beezer

---

*The Honorable James L. Graham, United States District Judge for the
Southern District of Ohio, sitting by designation.

18293

## COUNSEL

Bryan M. Weiss, Murchison & Cumming, Los Angeles, California, for the defendant-appellant.

Eric R. Little, Little Reid & Karzai, LLP, Irvine, California, for the plaintiff-appellee.

## OPINION

BEEZER, Circuit Judge:

In *NFL Properties LLC v. All Authentic Corp.* ("NFL Action"), NFL Properties sued All Authentic for allegedly selling counterfeit National Football League jerseys. The plaintiff here, Hudson Insurance Company, defended All Authentic in the NFL Action under its insurance policy with All Authentic. The defendant, Colony Insurance Company, however, argued that its policy did not cover the claims that NFL Properties brought against All Authentic and refused to defend the suit.

In this diversity action, Hudson seeks equitable contribution from Colony for Hudson's costs of defending All Authentic in the NFL Action. The district court correctly granted Hudson's motion for summary judgment: Hudson is

entitled to equitable contribution because Colony had a duty to defend All Authentic but failed to do so. The NFL Properties complaint alleged facts showing that All Authentic was potentially liable for slogan infringement, a claim covered by the Colony insurance policy. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I

NFL Properties LLC sued All Authentic Corporation for damages in the Southern District of New York. The complaint ("NFL complaint") essentially accused All Authentic of making and selling counterfeit NFL jerseys. The complaint listed several specific causes of action for trademark infringement, trademark counterfeiting, trademark dilution, unfair competition, and deceptive acts and practices.

There are several paragraphs of the NFL complaint that are particularly relevant here. Paragraph 18 states that All Authentic offered a counterfeit "Steel Curtain Custom Limited Edition Steelers Jersey" on All Authentic's website. Paragraph 18 further states:

> *The Counterfeit Jersey reads "Steel Curtain" across the back* and bears the numbers of four Pittsburgh Steelers players using the same style of numbering and lettering as appears on the authentic Pittsburgh Steelers' NFL Uniform Design Jerseys. *The Steelers have strong common law rights in the mark "Steel Curtain" and own a state registration for the mark "Steel Curtain . . . Pittsburgh Steelers."* The Counterfeit Jersey features the same black and gold color combination and striping as the official Pittsburgh Steelers' NFL Uniform Design Jerseys.

(Emphasis added).

The NFL complaint further alleges that:

> *[Plaintiff] NFL Properties is jointly owned in equal shares by the Member Clubs of the NFL.* NFL Properties has been licensed to use the trademarks of the Member Clubs for commercial purposes and is the exclusive trademark enforcement arm for the Member Clubs. In these capacities, *NFL Properties promotes the intellectual property of the NFL and the Member Clubs* in their commercial activities and *protects the marks owned by the Member Clubs* against misuse in various forms.

(Emphasis added). Finally, the complaint states that All Authentic "has not been granted permission or authorization by NFL Properties, the NFL or its Member Clubs to use any NFL Marks in connection with jerseys."

All Authentic tendered the NFL Action to two insurance companies whose policies it held: Colony and Hudson. Colony sent a letter denying that it had a duty to defend or indemnify All Authentic in the NFL Action. Hudson, on the other hand, advised All Authentic that it would defend the NFL Action under a reservation of rights.

In relevant part, the Colony insurance policy covered "personal and advertising injury," defined as "injury . . . arising out of [the offense of] . . . [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.' " The Colony policy contained an exclusion providing that the policy did not apply to " 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your 'advertisement,' of copyright, trade dress or slogan." [1]

---

[1]Hudson's policy covered "advertising injury," including "[i]nfringement of copyright, title or slogan," but did not contain a trademark exclusion.

Hudson defended All Authentic in the NFL Action, incurring defense costs in excess of $900,000. The NFL Action ultimately settled. In November 2007, Hudson initiated this action against Colony for equitable contribution for 50% of its defense fees and costs incurred in the defense of All Authentic.[2] Hudson's complaint argues that Colony should have defended All Authentic in the NFL Action because "[b]ased on the allegations in the *NFL* Action, All Authentic faced potentially covered liability for trade dress infringement and slogan infringement in All Authentic's advertisements." The district court granted Hudson's motion for partial summary judgment, concluding that "by alleging that the insured infringed 'Steel Curtain,' the [NFL complaint] set forth a claim for slogan infringement that was potentially covered by the Colony Policy." Colony appeals this ruling.

## II

We review a grant of summary judgment de novo. *Anthem Elecs., Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). We determine whether, viewing the evidence in the light most favorable to Colony, the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact. *Id.*

## III

[1] An action for equitable contribution allows an insurer to sue for pro rata reimbursement from another insurance company when it has defended a mutually insured party without participation by the other insurance company. *See Monticello Ins. Co. v. Essex Ins. Co.*, 76 Cal. Rptr. 3d 848, 856 (Ct. App. 2008). Hudson argues that Colony was obligated under its insurance policy with All Authentic to defend All Authentic in the NFL Action. Colony disagrees, arguing that an

---

[2]Hudson also had an equitable subrogation claim that was not at issue in the motion for summary judgment and is not at issue here.

essential element for the duty to defend was not met: namely that Hudson has not shown that NFL Property's "allegations created a potential for liability under one of the covered offenses." *See Hameid v. Nat'l Fire Ins. of Hartford*, 71 P.3d 761, 765 (Cal. 2003).

**[2]** If a potential cause of action is shown for one covered claim, Colony had a duty to defend All Authentic as to all claims in the NFL Action, regardless of whether the other claims were covered under the policy. *See CNA Cas. of Cal. v. Seaboard Sur. Co.*, 222 Cal. Rptr. 276, 284 n.7 (Ct. App. 1986). Colony concedes that its policy covered slogan infringement; therefore, if slogan infringement was potentially alleged in the NFL complaint, Hudson will be entitled to equitable contribution for its whole defense.[3]

Colony faces an uphill battle from the beginning because the duty to defend in California is extensive. "[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. . . . [T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy." *Montrose Chem. Corp. of Cal. v. Superior Court*, 861 P.2d 1153, 1157 (Cal. 1993) (citation omitted) (internal quotation marks omitted). Any ambiguity in the insurance policy, including in the exclusions, must be resolved in favor of finding coverage. *See id.* at 1160; *CNA*, 222 Cal. Rptr. at 285. "Where there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer." *See CNA*, 222 Cal. Rptr. at 279 n.1. Because the duty to defend is so broad, we hold that Colony's three arguments against its duty to defend are without merit.

---

[3]Because we conclude that the NFL complaint potentially supported a claim for slogan infringement, we need not address Hudson's alternative argument that the NFL complaint also potentially supported a claim for trade dress infringement.

## A

**[3]** Colony first argues that the district court should be reversed because "[n]o such claim [of slogan infringement] was made in the complaint and California law precludes a court or insured from speculating about unpled claims to manufacture a potential for coverage." This argument fails because under California law "the insurer's duty is not measured by the technical legal cause of action pleaded in the underlying third party complaint, but rather by the *potential* for liability under the policy's coverage as revealed by the *facts* alleged in the complaint or otherwise known to the insurer." *CNA*, 222 Cal. Rptr. at 280.

Colony argues that the *Gunderson* line of narrow "speculation" cases supports its argument that the NFL complaint did not potentially state a cause of action for slogan infringement. These cases do not support Colony's argument. These cases concluded that there was no potential for coverage, not because the complaint did not list a particular legal cause of action, but because the complaint did not allege *any facts* supporting a covered cause of action.[4]

The lead "speculation case," *Gunderson v. Fire Insurance Exchange*, 44 Cal. Rptr. 2d 272 (Ct. App. 1995), is illustrative. In *Gunderson*, the insureds sued their insurance com-

---

[4]*See Friedman Prof'l Mgmt. Co. v. Norcal Mut. Ins. Co.*, 15 Cal. Rptr. 3d 359, 372-73 (Ct. App. 2004) (noting that "[t]he insured may not speculate about unpled third party claims to manufacture coverage" but examining the "*facts shown in the third party complaint*" to determine that "[t]here have been no allegations, or facts ever presented to or learned by the insurer" to support coverage); *Zelda, Inc. v. Northland Ins. Co.*, 66 Cal. Rptr. 2d 356, 361-62 (Ct. App. 1997) ("The duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source. . . . Here, the facts known to Northland at the inception of the suit were the allegations in the complaints and in the letter from Trujillo's attorney, and the statements in the police report. These documents support two versions of the altercation . . . . Both versions of the altercation trigger the exclusion.").

pany, arguing that the company wrongly failed to defend them in a dispute over an easement. *Id.* at 275-76. The insureds argued that the action was covered under their policy because the third-party plaintiff could have sued them for the property damage they caused to the third-party plaintiff's fence and property damage was covered under their policy. *Id.* at 276-77. In holding that there was no potential for coverage, the court stated that the "[third-party plaintiff's] complaint, on its face, *alleged no facts* showing a potential for coverage" because "none of the allegations concerning damage to the fence . . . were ever incorporated in her complaint against appellants." *Id.* at 279 (first emphasis added).

**[4]** Here, in contrast, the facts alleged in the NFL complaint state that All Authentic sold a "Steel Curtain Limited Edition Steelers Jersey" on its website, which "reads 'Steel Curtain' across the back and bears the numbers of four Pittsburgh Steelers players." As the district court noted, "A fair reading of the [NFL complaint] reveals that 'Steel Curtain' is used to promote fan loyalty to the Steelers (an NFL Member Club) in general, and a subset of Steeler players in particular." The district court concluded that this potentially stated a claim for slogan infringement because a "slogan" is a "brief attention-getting phrase used in advertising or promotion." (Quoting *Palmer v. Truck Ins. Exch.*, 988 P.2d 568, 576 (Cal. 1999) (defining "slogan" under California law)). In *Gunderson* neither the legal theory of property damage nor facts supporting the legal theory of property damage were alleged, but here, the NFL complaint alleges facts potentially supporting a legal theory of slogan infringement.

**[5]** The Sixth Circuit has also addressed this question.[5] In *Cincinnati Insurance Co. v. Zen Design Group, Ltd.*, the Sixth Circuit concluded that the underlying complaint potentially

---

[5]The Sixth Circuit applied Michigan law, but California law and Michigan law do not appear to materially differ on this matter, and both parties discuss *Zen Design* as persuasive authority.

stated an action for slogan infringement because the complaint stated that the third-party plaintiff "marketed and advertised its LED handheld flashlights using the widely-recognized trademarks 'WEARABLE LIGHT' and 'SAPPHIRE.' " 329 F.3d 546, 550, 556 (6th Cir. 2003). Just as in this case, the insurance policy covered slogan infringement but not trademark infringement. *See id.* at 549. The Sixth Circuit held that it did not matter that it was doubtful whether WEARABLE LIGHT could legally be a slogan or that the complaint "never refer[red] to WEARABLE LIGHT as a slogan." *Id.* at 553, 554 n.4. Because "[a]ny doubt as to the insurer's liability must be resolved in favor of the insured," the court concluded that "the complaint's failure to refer to 'The Wearable Light' as a slogan and its failure to include infringement of slogan as a specific claim does not alleviate [the] duty to defend." *Id.* at 552, 555. Similarly here, it does not matter that the NFL complaint never referred to "steel curtain" as a slogan and never listed slogan infringement as a cause of action.

## B

Colony next argues that this Court should not find potential liability for slogan infringement because NFL Properties and its "powerhouse international law firm" must have consciously "chose[n] not to advance [NFL Properties'] claim for slogan infringement, which [they were] clearly aware of." There is no merit for this "election" or "conscious avoidance" theory in the case law. Colony points out that in *Microtec Research, Inc. v. Nationwide Mutual Insurance Co.*, 40 F.3d 968 (9th Cir. 1994), we rejected that certain allegations supported the legal theory of disparagement. We noted that the third-party plaintiff "carefully avoided suing [the insured] for damages arising out of those advertisements." (Quoting *Microtec*, 40 F.3d at 971). There was extrinsic evidence that showed that the insured had produced some disparaging advertisements, and the third-party plaintiff "perhaps could have sued" for disparagement, but we reasoned that the third-

party plaintiff "elected not to make that claim." *Id.* (quoting *Microtec*, 40 F.3d at 971).

**[6]** Contrary to Colony's assertion, however, *Microtec* does not "stand[ ] for the principle that where the plaintiff acknowledges the existence of facts that could give rise to a cause of action but consciously avoids asserting that cause of action," there is no duty to defend. Rather, we relied once again on the absence of any *factual* allegations in the complaint. *See Microtec*, 40 F.3d at 971. We noted that the third-party plaintiff "did not aver that [the insured] had said anything negative about Green Hills" and that "[t]he complaint conspicuously and carefully omit[ted] to allege any wrongdoing with respect to the[ ] [disparaging] advertisements." *Id.* There was extrinsic evidence about disparaging advertisements, but the third-party plaintiff did not refer to those advertisements in its complaint at all—including any factual allegations. *See id.* at 970-71. The technical label on a cause of action does not dictate the duty to defend whether the claimed cause of action was omitted out of negligence or "for strategic adversarial reasons." *CNA*, 222 Cal. Rptr. at 282. It only matters whether the facts alleged or otherwise known by the insurer suggest potential liability or whether they do not. *See id.*

## C

Finally, Colony argues that even if the NFL complaint stated a potential slogan infringement claim, "the NFL disclaimed any rights to that slogan in its complaint and thus could not have pursued a claim for slogan infringement." "Thus," Colony exclaims, "the District Court imposed a duty to defend based on the existence of a possible claim that, as plead[ed], could not be brought as a matter of law!" According to Colony, the facts in the complaint fail to allege ownership of the "Steel Curtain" slogan or that NFL Properties had standing to enforce the slogan rights.

California courts have cast doubt on the notion that a complaint must support all elements of a cause of action to state potential liability. *CNA Casualty* rejected the argument that there was no coverage for a potential malicious prosecution claim even though it was clear that the malicious prosecution claim could not be brought because an essential element was missing (prior termination of the earlier proceeding in favor of the party alleging malicious prosecution). *See CNA*, 222 Cal. Rptr. at 281 & n.4. That the insurer "may have known of a good defense, even an ironclad one, to the malicious prosecution claim did not relieve it of its obligation to defend its insured." *Id.* at 281 n.4; *see also id.* at 284 n.7 ("[T]he absence of an element of a properly pleaded cause of action is of no moment in determining [the] duty to defend. For that matter, neither did the fact that there was no colorable basis for Federal jurisdiction [defeat this] obligation." (quoting *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 523 (N.Y. 1981)).

**[7]** Indeed, in cases where a complaint alleges facts that support a duty to defend, California courts have concluded that there is no duty to defend only when the third-party complaint unambiguously disclaims or concedes an element. *See Low v. Golden Eagle Ins. Co.*, 120 Cal. Rptr. 2d 827, 829, 831 (Ct. App. 2002) (concluding there was no duty to defend because "although there is an allegation to the effect the third party plaintiff, Ms. Perez, sustained personal injuries as a result of ingesting claimant's product, no claim for recovery of damages for those alleged injuries is asserted in the complaint. Instead, the following statement appears in paragraph 9: 'Plaintiff expressly disclaims seeking recovery for personal injuries attributable to [consuming the product]' "); *Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 12 Cal. Rptr. 2d 629, 632-33 (Ct. App. 1992) (noting that the insured "conce[d]d that all repair work was performed for the property owner, not [the third-party plaintiff]" so that the third-party plaintiff "could not assert a claim for breach of warranty"; the

property owners would have to "file[ ] their own actions for property damages").

**[8]** However, NFL Properties did not unambiguously concede in its complaint that it had no standing to bring a slogan infringement claim for "Steel Curtain," and NFL Properties did not expressly disclaim a slogan infringement claim or standing to bring such a claim. The NFL Complaint states that "NFL Properties is jointly owned in equal shares by the Member Clubs of the NFL. . . . NFL Properties promotes the intellectual property of the NFL and the Member Clubs . . . and protects the marks owned by the Member Clubs against misuse in various forms." Then the complaint states that "[t]he Steelers [an NFL Member Club] have strong common law rights in the mark 'Steel Curtain.' "

**[9]** Rather than unambiguously conceding the element of ownership or disclaiming standing, these statements argue that NFL Properties *does* have standing to enforce the Steelers' rights to the phrase "Steel Curtain." Because any ambiguity in the complaint or doubt regarding the duty to defend must be resolved in favor of coverage, *Montrose*, 861 P.2d at 1160; *CNA*, 222 Cal. Rptr. at 280, NFL Properties' ambiguous statements potentially support standing to sue for slogan infringement.

**[10]** We reject Colony's arguments on appeal. The district court correctly concluded there was a duty to defend based on a potential slogan infringement claim. Because the NFL complaint potentially stated a cause of action for slogan infringement, Colony had a duty to defend All Authentic in the NFL Action, and Hudson is entitled to equitable contribution.

**AFFIRMED.**