Filed 7/15/14  Yu v. Sequoia Ins. Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| BANN-SHIANG LIZA YU,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>SEQUOIA INSURANCE COMPANY,<br><br>    Defendant and Appellant. | G046603 (cons. with G046698)<br><br>(Super. Ct. No. 30-2010-00393023)<br><br>ORDER (1) DENYING PETITION FOR REHEARING AND (2) MODIFYING OPINION; NO CHANGE IN JUDGMENT |

Defendant and appellant Sequoia Insurance Company's petition for rehearing is DENIED.

It is ordered that the opinion filed in the above-entitled matter on June 17, 2014, is hereby MODIFIED as follows:

On page 7, the second sentence of the last paragraph on the page, beginning with "To the contrary, the complaint Yu tendered," is deleted and replaced with the following two sentences:

To the contrary, the complaint Yu tendered to Sequoia alleged Yu had the right to use the Candlewood Suites trademarks under the Licensing Agreement; HHF terminated Yu's rights under the Licensing Agreement because she sought to use the trademarks without otherwise fully performing under the Licensing Agreement; Yu was required to cease using the trademarks by November 20, 2008; Yu removed all exterior signage in a reasonably timely manner; and, despite the passage of approximately four months time, HHF had been unable to gain access to Yu's hotel to confirm she had ceased using the trademarks. Based on these facts, the complaint plainly prayed for relief for trademark law violations — an indisputably covered claim — in the event mediation was unsuccessful and discovery revealed facts supporting that very claim.

This modification does not change the judgment.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.

2

Filed 6/17/14  Yu v. Sequoia Ins. Co. CA4/3 (unmodified version)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BANN-SHIANG LIZA YU,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SEQUOIA INSURANCE COMPANY,<br><br>    Defendant and Appellant. | G046603 (cons. with G046698)<br><br>(Super. Ct. No. 30-2010-00393023)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Thierry Patrick Colaw, Judge.  Reversed.

Mohammed K. Ghods and William A. Stahr for Plaintiff and Appellant.

Hayes Scott Bonino Ellingson & McLay, Mark G. Bonino, Stephen M. Hayes and Richard A. Dana for Defendant and Appellant.

*          *          *

Plaintiff Bann-Shiang Liza Yu (Yu) appeals from the judgment entered in favor of defendant Sequoia Insurance Company (Sequoia) in this insurance bad faith action, which alleged Sequoia improperly denied Yu's tender seeking a defense in the underlying lawsuit. Although the trial court determined the operative pleading in the underlying lawsuit included allegations triggering the duty to defend, the court concluded Sequoia nonetheless had no duty to defend because that lawsuit involved a claim by one insured against another insured and a policy exclusion therefore barred coverage. Yu appealed the trial court's determination the exclusion applied, and Sequoia cross-appealed the court's conclusion the allegations in the underlying lawsuit would have triggered the duty to defend, but for the exclusion.

We reverse. Although the trial court correctly found a duty to defend arising from the operative pleading in the underlying lawsuit, the court erred in applying the intra-insured claims exclusion to defeat that duty.

I

FACTS AND PROCEDURAL HISTORY

Yu is the owner of an Anaheim hotel that initially operated as a Candlewood Suites through a licensing agreement (Licensing Agreement) with Holiday Hospitality Franchising, Inc. (HHF). HHF previously had entered into a master agreement with Six Continents, Inc. (Six Continents) which entitled HHF "to license Proprietary Rights for use in Candlewood Suites® hotels and . . . succeed[] to the rights of Candlewood and [Six Continents] with respect to [the Licensing Agreement with Yu]."

Sequoia issued Yu a general liability insurance policy (Policy) covering all claims arising from hotel operations, including claims for "advertising injury," defined as "[t]he use of another's advertising idea in your 'advertisement'; or [¶] . . . [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement'."

2

The Licensing Agreement required Yu to name HHF as an "additional insured" by using a standard endorsement added to her general liability policy. Consequently, the Policy included endorsement CG2026, which listed HHF as an additional insured. Two other endorsements, discussed below, also were part of the Policy and specifically limited the circumstances in which HHF would qualify as an additional insured.

On November 18, 2008, HHF notified Yu it was terminating the Licensing Agreement effective November 20, 2008, because of "multiple ongoing uncured defaults in the operation of the . . . hotel." The termination letter cited two specific defaults: noncompliant bed linens and failure to provide copies of fire alarm reports. On November 20, 2008, HHF and Six Continents sued Yu in federal district court in Kansas (Kansas Lawsuit) for trademark infringement, injunctive relief, and damages, alleging Yu continued to use the Candlewood Suites trademark after termination of the Licensing Agreement.

On February 10, 2009, HHF and Six Continents filed an amended complaint in the Kansas Lawsuit that omitted the claims for trademark infringement and injunctive relief, and instead alleged a single claim by HHF for breach of the Licensing Agreement. Though Six Continents was still a nominal party, it alleged no claim for relief.

The amended complaint acknowledged the Licensing Agreement required mediation before the litigation could proceed, and specifically addressed the issue of trademark infringement: "Ms. Yu was obligated to cease all use of all Proprietary Rights as of 3:00 p.m. Eastern Standard Time (Noon, Pacific Standard Time) on November 20, 2008 and appears to have removed or modified exterior signage in a reasonably timely manner thereafter; however, as of the date of this Amended Complaint, Licensor has not been able to secure access to the Hotel in order to confirm that all use of Proprietary Rights has ceased. Accordingly, pending access or discovery procedures resulting in

3

access, Licensor reserves the right to further amend this Amended Complaint in order to restore claims for trademark infringement under the trademark laws of the United States."

Despite dropping the cause of action for trademark infringement, the amended complaint continued to specifically request damages for trademark infringement in the prayer for relief: "Failing resolution by mediation, plaintiff Holiday Hospitality Franchising, Inc., asks this Court to enter judgment in its favor: [¶] A. The amount of unpaid fees and royalties due as of the date of termination but not paid, as established by proof following discovery; [¶] B. Liquidated damages as provided in the License; and [¶] C. Its costs and expenses, including attorneys' fees as provided by the License; and that it be awarded such other, further or different relief as the Court deems just and proper, *including but not limited to relief under the trademark laws of the United States in the event it appears that Licensee did not fully and completely cease all use of the Proprietary Marks following termination*." (Italics added.)

On February 23, 2009, Yu tendered defense of the Kansas Lawsuit to Sequoia. Within days, Sequoia sent Yu a letter declining the tender. Sequoia stated in the letter it had no duty to defend Yu because (1) the amended complaint contained no covered claim, and (2) a policy exclusion for "injury to an insured" applied. Yu therefore provided her own defense in the Kansas Lawsuit and eventually negotiated a settlement that required HHF to pay Yu $100,000 for a mutual general release of all claims the two parties had against one another.

After settling the Kansas Lawsuit, Yu filed this action against Sequoia for insurance bad faith. The trial court bifurcated the action and conducted a two-day bench trial on the duty to defend. At the end of the first phase, the trial court entered judgment for Sequoia because it concluded Sequoia had no duty to defend Yu in the Kansas Lawsuit. In a lengthy statement of decision, the trial court explained there was a "'potential for coverage' triggered by the allegations of the HHF Amended Complaint," but Sequoia had no duty to defend the Kansas Lawsuit because HHF qualified as an

4

insured under the Policy and the Policy's "Intra-Insured Claims" exclusion therefore applied to bar coverage.  Regarding Six Continents, the trial court also concluded Sequoia had no duty to defend because Six Continents did not allege any claims against Yu in the Kansas Lawsuit, but merely was included in the caption as a nominal party.[1]

The trial court entered judgment in Sequoia's favor and Yu appealed, challenging the finding the Intra-Insured Claims exclusion applied.  Sequoia filed a protective cross-appeal, contesting the trial court's determination the underlying claim created a potential for coverage that triggered the duty to defend.

II

DISCUSSION

A.    *Standard of Review*

The appeal and cross-appeal challenge trial court rulings interpreting the provisions of an insurance policy.  We review such rulings under the de novo standard of review.  (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470 (*E.M.M.I.*); *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 ["While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply"].)  Whether policy language is ambiguous is also a question of law subject to de novo review.  (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912.)

---

[1]    Yu does not challenge the trial court's ruling Six Continents did not allege any claims in the Kansas Lawsuit that could give rise to a duty to defend.  Accordingly, we do not discuss Six Continents any further in this opinion and simply note our conclusion HHF does not qualify as an insured under the Intra-Insured Claims exclusion applies with equal force to Six Continents.

5

B. *The Trial Court Properly Found a Potential for Coverage Under the Policy*

In resolving the question whether a duty to defend exists, the insurer bears a greater burden than the insured. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 (*Montrose*).) The insured has the initial burden to make a prima facie showing the third party claim *potentially* falls within the policy's coverage. (*Id*. at pp. 300, 304; *Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1188.) The burden then shifts to the insurer to *conclusively* show the claim cannot fall within the policy's coverage. (*Montrose*, at pp. 300, 304.)

"'[T]he insurer's duty [to defend] is not measured by the technical legal cause of action pleaded in the underlying third party complaint, but rather by the *potential* for liability under the policy's coverage as revealed by the *facts* alleged in the complaint or otherwise known to the insurer.' [Citation.]" (*Hudson Ins. Co. v. Colony Ins. Co.* (9th Cir. 2010) 624 F.3d 1264, 1267 quoting *CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 606 (original italics); *Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 510.) "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." (*Montrose*, *supra*, 6 Cal.4th at pp. 299-300.)

Here, the trial court found the factual allegations in the Kansas Lawsuit amended complaint triggered a duty to defend: "While the HHF Amended Complaint withdrew the specific language that was contained in the original complaint that would have unquestionably triggered coverage concerning an advertising injury, the plaintiff in the underlying Kansas action still hedged its language in the HHF Amended Complaint and provided in paragraphs 8.e., 9.b., 11 and in the prayer at paragraph C . . . that Yu *could still be in violation of trade infringement* depending on what had yet to be determined. [¶] . . . Under the broad obligations encompassed in the duty to defend as interpreted in California case law, this conditional language would trigger the duty to

defend. The extrinsic evidence that adjuster Drain obtained from attorney Silberman[2] does not negate this potential for coverage. . . . Within the wording of the HHF Amended Complaint were clear allegations that Yu might still be in violation of HHF's contractual rights." (Original italics.)

Sequoia argues the trial court erred in finding a duty to defend because HHF's amended complaint did not contain a covered claim. Sequoia further argues the mere possibility HHF might amend the complaint to reassert the trademark infringement claim was not a sufficient basis for finding a duty to defend. According to HHF, it is error to base a duty to defend on the mere "speculation" HHF might amend its complaint to add a covered claim in the future. The argument lacks merit.

This case was not a situation where the insurer had to *speculate* about a future amendment of HHF's complaint in the Kansas Lawsuit to find the potential for coverage. To the contrary, the complaint Yu tendered to Sequoia plainly prayed for relief for trademark law violations — an indisputably covered claim — in the event mediation was unsuccessful and discovery revealed facts supporting that very claim. Under the more liberal federal pleading standards applicable to the Kansas Lawsuit, no formal amended complaint would have been necessary for HHF to pursue damages from Yu for alleged trademark law violations. (Fed. Rules Civ. Proc., rule 15(b)(1), 28 U.S.C. [at trial, "[t]he court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits"]; Fed. Rules Civ. Proc., rule 54(c), 28 U.S.C. ["Every . . . final judgment [other than a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"].)

---

2    Here, the trial court was referencing evidence Sequoia's adjuster handling Yu's tender had learned from HHF's counsel in the Kansas Lawsuit that HHF was not pursuing the trademark infringement claim it had pleaded in the original complaint.

We find it particularly significant HHF plainly stated its intent, should mediation fail, to conduct formal discovery on whether Yu had ceased using the Candlewood Suites trademark. HHF's explicit statement of its intent to conduct formal discovery on that indisputably covered claim created a potential for coverage. Under the Policy, Yu had a reasonable expectation of a defense to this trademark violation claim. Sequoia's refusal to provide Yu with an attorney to defend her deposition on that issue, should mediation fail, flatly violated her reasonable expectation of coverage. (See *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 869 ["An insurer has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend him or her against the suit based on the nature and kind of risk covered by the policy, or when the underlying suit potentially seeks damages within the coverage of the policy"].)

We further note Sequoia could not base its denial of tender on the fact HHF's counsel in the Kansas Lawsuit told Sequoia his client did not intend to seek recovery for trademark violations. Such a statement by counsel was inherently self-serving because it effectively deprived Yu of an insurance-paid defense in the Kansas Lawsuit, thereby increasing pressure on Yu to settle. Such a self-serving, nonbinding representation by opposing counsel is not a sufficient basis for denying tender of the defense, particularly when contrasted with the allegations in the amended complaint and HHF's later acknowledgment in the settlement agreement that the Kansas Lawsuit "alleged claims arising out of YU's advertising and sought protection of Candlewood Suites related to copyright, trademarks, trade names and slogans."

"If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 655.) Guided by that principle, we conclude the trial court properly

8

found the allegations in the amended complaint created a potential for coverage under the Policy, and thus a duty to defend Yu in the Kansas Lawsuit.

C.     *The Trial Court Erred in Applying the Intra-Insured Claims Exclusion to Deny Coverage*

Despite finding the Kansas Lawsuit created a potential for coverage under the Policy, the trial court concluded Sequoia had no duty to defend Yu because HHF was an "insured" under the Policy's Intra-Insured Claims exclusion and that exclusion therefore barred coverage. We disagree because HHF does not qualify as an insured under the Policy for the Kansas Lawsuit.

"[P]olicy exclusions are strictly construed." (*E.M.M.I.*, *supra*, 32 Cal.4th at p. 471.) ""Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations." [Citation.]" (*Id*. at pp. 470-471.) Nonetheless, a policy exclusion is given "'literal effect'" and applied to deny coverage that would otherwise exist "'where an exclusion is clear and unambiguous." (*Westoil Terminals Co., Inc. v. Industrial Indemnity Co.* (2003) 110 Cal.App.4th 139, 146.)

Here, the Policy's Intra-Insured Claims exclusion states, "Liability Coverage, as provided under this policy, does not apply to injury or damage sustained by any insured that is described in Section II — Who is an Insured. We shall have no obligation to defend or indemnify any insured against a claim by another insured. [¶] . . . If a claim is made or a complaint is filed by an insured against an individual or entity which is also an insured, then there is NO LIABILITY COVERAGE for that person or entity, regardless of any other coverage provisions that might otherwise apply." (Boldface omitted.)

On its face, the Intra-Insured Claims exclusion bars coverage if the Kansas Lawsuit is a claim by an "insured" against another "insured" regardless of the form of the claim or complaint. The parties do not dispute Yu is an insured because she is the named

9

insured who purchased the Policy. The parties' dispute focuses on whether HHF is an insured within the meaning of this exclusion.[3]

The Policy states, "The word 'insured' means any person or organization qualifying as such under Section II – Who is an Insured." The trial court found HHF was an insured under the Policy based on two separate endorsements that amended "Section II – Who is an Insured": (1) the "Additional Insured – Designated Person or Organization" endorsement (Additional Insured Endorsement), and (2) the "Commercial General Liability Coverage Form Extender" endorsement (Coverage Extender Endorsement). We therefore must determine whether HHF "qualify[ied]" as an insured under either of these endorsements.

1.    The Additional Insured Endorsement

This endorsement provides, "Section II — Who is an Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, *but only with respect to* liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf: [¶] A. In the performance of your ongoing operations; or [¶] B. In connection with your premises owned by or rented to you." (Italics added, boldface omitted.)

---

[3]    Sequoia points to language in the Intra-Insured Claims exclusion that states, "This exclusion shall apply regardless of the legal form any claim or complaint may take and shall apply to each and every cause of action and allegation contained in a claim or complaint if any cause of action in that claim or complaint in any manner sets forth an allegation of any claim of injury or damage sustained by any insured." Based on this language, Sequoia contends the Kansas Lawsuit need only allege a single claim by an insured against an insured for the Intra-Insured Claims exclusion to deny Yu coverage for the entire Kansas Lawsuit. This language, however, is irrelevant because we conclude the facts alleged in the Kansas Lawsuit did not give rise to even a single claim by an insured against an insured within the meaning of the policy, and therefore the Intra-Insured Claims exclusion did not apply.

10

To qualify as an insured under the Additional Insured Endorsement, HHF therefore not only had to be designated as an additional insured, but it also had to face liability for the identified types of injuries or damages that were caused by Yu's acts or omissions. (*Gemini Ins. Co. v. Delos Ins. Co.* (2012) 211 Cal.App.4th 719, 723 (*Gemini*); see *National Union Fire Ins. Co. v. Nationwide Ins. Co.* (1999) 69 Cal.App.4th 709, 719 [entity designated as additional insured does not qualify as insured under insurance policy unless all conditions of additional insured endorsement are satisfied].)

In *Gemini*, a tenant negligently started a fire that damaged a restaurant it rented. The landlord's insurer paid the landlord's claim for the fire damage and then sought reimbursement from the tenant's insurer. The tenant's insurer denied coverage based on an intra-insured claims exclusion that barred coverage on claims by one insured against another insured. The tenant's insurer pointed out the landlord was an insured under the exclusion based on an additional insured endorsement naming the landlord. The landlord's insurer then sued the tenant's insurer and the trial court entered judgment against the tenant's insurer because the additional insured endorsement made the landlord an insured only when the landlord faced liability resulting from the tenant's act or omission in operating the restaurant, and the underlying claim did not seek to hold the landlord liable for the tenant's act or omission. (*Gemini*, *supra*, 211 Cal.App.4th at pp. 721-722.)

The Court of Appeal affirmed because "[a]n additional insured provision is designed "'to protect parties who are not named insureds from exposure to vicarious liability for acts of the named insured,'"'" and the landlord did not face vicarious liability from a third party based on the tenant's act or omission. (*Gemini*, *supra*, 211 Cal.App.4th at p. 723.) Instead, the landlord sought to recover for its own direct damages caused by the tenant's negligence. Consequently, the landlord did not qualify as an insured under the additional insured endorsement and the intra-insured claims exclusion did not bar the landlord's claim. (*Ibid*.)

11

Here, the Additional Insured Endorsement also made HHF an insured only when it faced vicarious liability based on Yu's acts or omission, i.e., "only with respect to liability for . . . 'personal and advertising injury' caused, in whole or in part, by [Yu's] acts or omissions . . . ." HHF, however, did not face liability from a third party in the Kansas Lawsuit. To the contrary, HHF was the plaintiff who sought to impose liability on Yu for her act or omission in the same way the landlord sought to impose liability on the tenant in *Gemini*. Accordingly, HHF did not qualify as an insured based on the Additional Insured Endorsement, and the trial court erred in concluding the Intra-Insured Claims exclusion applied.

2. The Coverage Extender Endorsement

This endorsement provides, "Section II — Who is an Insured is amended to include as an additional insured, any person or organization in a class described below, with whom you have agreed in writing in a contract or agreement that such person or organization is to be added as an additional insured on your policy. *The inclusion as an additional insured is subject to the conditions shown in the descriptions of the applicable Additional Insured class. . . .* As respects all the foregoing, *the contract or agreement must*: [¶] a. Have been executed and be in effect prior to the 'bodily injury', 'property damage', or 'personal injury and advertising injury' to which this coverage applies; and [¶] b. *Be in effect at the time of the 'bodily injury' 'property damage', or 'personal injury and advertising injury' to which this coverage applies, occurred*. [¶] *The Additional Insured classes are*: . . . [¶] . . . [¶] 10. *Grantor of Franchise* [¶] A person or organization who grants a franchise to you, *but only with respect to their liability as a grantor of a franchise to you*." (Italics added; boldface omitted.) Sequoia and the trial court relied on the franchise grantor class to conclude HHF was an insured under this endorsement.

12

The Coverage Extender Endorsement expands the Policy's definition of an insured to provide coverage to 10 classes of persons or organizations that satisfy the endorsement's conditions regardless of whether those persons or organizations are expressly designated as additional insureds. For HHF to qualify as an insured under the franchise grantor class in the Coverage Extender Endorsement, HHF and the Kansas Lawsuit must satisfy each of the following conditions: (1) HHF must have a written contract with Yu requiring her to include HHF as an additional insured on her insurance policy; (2) that contract must have been executed and in effect before the injury occurred for which the Coverage Extender Endorsement provides coverage; (3) that contract also must have been in effect at the time the injury occurred for which the endorsement provides coverage; (4) HHF must have granted Yu a franchise; and (5) HHF must have faced liability as a grantor of a franchise to Yu. HHF and the Kansas Lawsuit did not satisfy the third and fifth conditions.

On the third condition, the parties agree the contract requiring Yu to name HHF as an additional insured was the Licensing Agreement and HHF terminated that agreement on November 20, 2008. The Kansas Lawsuit's allegations gave rise to two potential types of damages: (1) damages for Yu's breach of the Licensing Agreement by failing to comply with HHF's requirements regarding bed linens and safety reports, and (2) damages for Yu's unauthorized use of trademarks, service marks, and trade names. The breach of contract damages necessarily occurred *before* HHF terminated the Licensing Agreement because Yu's alleged breach was the stated reason for HHF terminating the agreement, but the trademark damages necessarily occurred *after* HHF terminated the Licensing Agreement because Yu had the right to use the trademarks, service marks, and trade names under the Licensing Agreement until HHF terminated it. Consequently, the only damages or injury that possibly could have occurred while the Licensing Agreement was in effect was the breach of contract damages. Those damages, however, are not damages to which the Coverage Extender Endorsement applies because

13

they are not damages for "'bodily injury', 'property damage', or 'personal injury and advertising injury'" as defined in the Policy. The third condition for HHF to qualify as an insured under the Coverage Extender Endorsement therefore was not satisfied because the contract that required Yu to name HHF as an additional insured was not in effect at the time of any injury or damage to which that endorsement or the Policy applied.

Sequoia contends HHF satisfied any timing requirement necessary for it to qualify as an insured because the Kansas Lawsuit alleged conduct that predated HHF terminating the Licensing Agreement. This arguments fails because Sequoia does not distinguish between the breach of contract damages, for which neither the Coverage Extender Endorsement nor the Policy in general provided coverage, and the trademark damages, which could not have occurred until after HHF terminated the Licensing Agreement. Indeed, Sequoia fails to recognize the Coverage Extender Endorsement imposed a timing requirement for HHF to qualify as an insured under that endorsement. Instead, to support its timing argument, Sequoia cites to the Policy's general provisions defining the scope of the coverage for personal and advertising injury liability. Sequoia's reliance on those provisions is misplaced because they are irrelevant to determining whether HHF qualified as an insured under the Coverage Extender Endorsement. In addition, the conduct Sequoia relies on occurred before HHF terminated the Licensing Agreement and did not raise personal and advertising injury liability; it supports only a breach of contract claim.

HHF and the Kansas Lawsuit also did not satisfy the Coverage Extender Endorsement's fifth condition for HHF to qualify as an insured because HHF did not face liability as a grantor of a franchise to Yu based on the Kansas Lawsuit. As explained above, policy provisions that designate persons or organizations as additional insureds are generally "designed '"to protect parties who are not named insureds from exposure to vicarious liability for acts of the named insured." [Citation.]' [Citation.]" (*Gemini*, *supra*, 211 Cal.App.4th at p. 723.) In designating franchisors as additional insureds

14

protected by its coverage, the Coverage Extender Endorsement limits that coverage to franchisors that face "liability as grantor of a franchise to [the named insured]." Here, HHF faced no liability in the Kansas Lawsuit. Plainly, HHF was the plaintiff seeking to impose liability on Yu and therefore did not qualify as an insured under the Coverage Extender Endorsement. (See *ibid.*)

Sequoia contends the $100,000 HHF paid Yu to settle the Kansas Lawsuit demonstrates HHF faced liability in that lawsuit as the grantor of a franchise to Yu. But nothing in the Kansas Lawsuit settlement agreement explains why HHF agreed to pay Yu $100,000 to settle that lawsuit. Nor does the record include any pleading or other document showing Yu or anyone else asserted any claim against HHF in the Kansas Lawsuit. Moreover, Sequoia cannot establish the propriety of its decision to deny Yu's defense tender based on events that occurred *after* Sequoia denied the tender. (See *Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.* (1998) 68 Cal.App.4th 1030, 1044 [" '' '[F]or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of the third party lawsuit" ' '' (italics omitted)].) The settlement is the only evidence Sequoia cites to show HHF faced liability in the Kansas Lawsuit, but that settlement occurred well after Sequoia denied Yu's tender and left her to defend that lawsuit on her own.

Accordingly, we conclude HHF did not qualify as an insured under the Coverage Extender Endorsement, and the trial court erred in relying on that endorsement to conclude the Intra-Insured Claims exclusion barred coverage. That conclusion eliminates the need to address Yu's contentions that the Intra-Insured Claims exclusion is unenforceable because it is not conspicuous, plain, or clear, and violates public policy.

15

## III

### DISPOSITION

The judgment is reversed.  Yu is entitled to her costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.